**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICKEY COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-02388 |
| v. | ) | |
| | ) | Judge Samuel Der-Yeghiayan |
| COUNTY OF COOK, a unit of local | ) | |
| Government; J.W. FAIRMAN, an individual, | ) | Magistrate Judge Morton Denlow |
| KIM DAVID GILMORE, an individual, the | ) | |
| CHIEF JUDGE OF THE CIRCUIT COURT OF | ) | |
| COOK COUNTY, ILLINOIS in his capacity as | ) | |
| Superintendent of the Juvenile Temporary | ) | |
| Detention Center, and EARL DUNLAP, the | ) | |
| Transitional Administrator of the Juvenile | ) | |
| Temporary Detention Center, | ) | Plaintiff Demands Trial by Jury. |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff RICKEY COLEMAN, by his attorney, John Thomas Moran, Jr., complains of

Defendants as follows:

### NATURE OF THE ACTION

1.      Plaintiff RICKEY COLEMAN brings this action for violations of the *Shakman*

Decree, and for violations of his civil rights pursuant to 42 U.S.C. § 1983 and 1988, and for

declaratory, compensatory, and equitable relief.  Defendants violated Plaintiff's rights under the

First and Fourteenth Amendments to the United States Constitution when Defendants terminated

him while not laying off others with less seniority and experience, and failed to offer him

preferential rehire despite acknowledging his eligibility for such rehire under county regulations,

and where Defendants engaged in other acts of retaliation against him in violation of his rights

under the First Amendment to freedom of speech and freedom of association.

## Jurisdiction and Venue

2.      This Court has original subject matter jurisdiction over Plaintiff's *Shakman*

Decree and First Amendment claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  The

*Shakman* Decree also confers jurisdiction with this Court over Plaintiff's *Shakman* Decree claim.

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff requests a trial by jury.

3.      Venue is proper in this judicial district in accord with 28 U.S.C.§1391 (b) and (c),

as Plaintiff and Defendants either reside in this district or have their principal place of business in

this district, and all events giving rise to Plaintiff's claims occurred within this district.

## Parties

4.      Plaintiff RICKEY COLEMAN ("Coleman") is a citizen of the United States who

resides in Cook County, Illinois.

5.      Plaintiff was hired by Cook County in 1988 as a Juvenile Detention Counselor.

He was terminated at the close of business on March 16, 2007 on three days notice after over 19

years of service from the position of Administrative Assistant IV/Floor Manager.  (Exhibit A to

this Complaint, March 13, 2007 letter from K. Gilmore, Bureau Chief to Plaintiff.)

6.      The County of Cook is a unit of local government in the State of Illinois.

Individual defendants J. W. Fairman and Kim David Gilmore were the final decision makers on

plaintiff's discharge.  In January 1, 2008, the Chief Judge of the Circuit Court of Cook County,

Illinois, via legislative enactment, became the *administration* of the Juvenile Temporary

Detention Center ("JTDC")  in Cook County, Illinois, the facility at which plaintiff had been

employed.   As a consequence of the case of *Jimmy Doe v. Cook County,* ND IL No. 99 C 3945,

2

Earl Dunlap was appointed transitional administrator of JTDC to "oversee, supervise and direct" all functions relating to the JTDC and remains in that capacity at the will of the Chief Judge. 55 ILCS 75/3(a). The Chief Judge has administrative control over the budget of the Cook County Juvenile Temporary Detention Center "subject to the approval of the Cook County Board . . . ." 55 ILCS 75/3 (c).

## Post- SRO Prerequisites

7. Plaintiff filed a Post-SRO complaint form with the Office of the Cook County Complaint Administrator ("CA") by certified mail on August 25, 2009, received August 27, 2009.

8. On March 8, 2010, the CA issued plaintiff a "notice of rights" form dated March 2, 2010 which states in pertinent part, that Plaintiff may "pursue his ... claim under applicable law by filing a law suit within forty-five (45) days of receipt of this Notice."

9. This complaint is timely filed within forty-five days of receipt of the CA's notice.

10. Plaintiff filed an earlier claim for "Supplemental Relief" on May 21, 2007, which dealt with pre-termination patronage misconduct by the County. He subsequently received an award.

## Factual Allegations Common to All Counts

11. Plaintiff has worked in juvenile corrections since 1988, holding various positions of increasing authority.

12. After obtaining a B.S. degree in Business Administration and a minor in Administration of Justice at William Carey University in Hattiesburg, Mississippi, Coleman played professional baseball in the San Diego Padres organization till 1988. In 1988, he

3

accepted a position as a Juvenile Detention Counselor and remained in that position until 1991 when he was promoted to Caseworker II/III in 1991, supervising subordinate caseworkers.

13.     In 1995, plaintiff was promoted to the position of "Group Service Supervisor" supervising over 50 employees and over 175 juvenile residents.

14.     In 1998 plaintiff was promoted to the position of "Administrative Assistant IV" and remained in that position until he was terminated in 2007.  The job description for this position is attached to this Complaint as Exhibit B.

15.     At no time was plaintiff a *Shakman*-exempt position nor was he ever notified that a position that he was holding was being redesignated an exempt position.

16.     And, for at least the 10 years prior to plaintiff discharge, he was on leave from a union position.

## COUNT I
(*Shakman* Violation v. Cook County, Chief Judge and Dunlap)

17.     Plaintiff realleges and incorporates by reference paragraphs 1 - 16  above as if fully set forth herein.

18.     The *Shakman Decree* forbids the "institutional defendants," i.e., defendant Cook County, the Chief Judge in his capacity as Superintendent of the JTDC and Earl Dunlap as its Transitional Administrator,  from conditioning, basing or retaliating as to any aspect or term of County employment, with respect to one who at the time is a County employee, upon or because of a political reason or factor.

19.     The position that Plaintiff occupied at the time of his layoff/discharge was not an exempt position.

4

20.     If a position is to be redesignated, the affected employee has the right to notice and to be transferred to a non-exempt position.

21.     In addition, the reason given for Plaintiff's layoff was a reduction in budget.  See Exhibit A to this Complaint.  The letter also stated that plaintiff was eligible for preferential rehire and plaintiff requested to be placed on any preferential reinstatement lists by letter to Gilmore dated April 8, 2007.

22.     Plaintiff's layoff had to be and was approved by J.W. Fairman, a political appointee of the late John Stroger, as well as by Gilmore.

23.     Despite Gilmore's statements in the layoff letter, shortly after his discharge, plaintiff discovered that his position had been renamed to that of "Team Leader" and backfilled by political employees.  These positions were never posted in violation of law and had identical duties to the position plaintiff was occupying at the time of his layoff.

24.     Indeed, the budget increased.

25.     Before his layoff, plaintiff had been repeatedly told by his immediate supervisor, Willie Ross, that "you think you are protected but you are not.  You better learn to play the game and support John Stroger."   Plaintiff took this to mean he had better buy tickets and donate to Stroger's campaign and the campaigns of his friends.

26.     After his layoff, plaintiff applied for numerous positions for which he was well-qualified before and after the transfer of administration to the Chief Judge.   He interviewed for one position post-transfer and was told at the interview that (a) he was qualified but (b) the position, though presently posted, was not available.

27.     Plaintiff, since his layoff, has applied for the following positions:

- Recreational supervisor
- Group Service supervisor
- Recreational Worker
- Juvenile Counselor
-Assistant Team Leader

28.     On June 2, 2009, plaintiff received an e-mail notice from County Recruiter

Felecia Watson that he had been selected to be interviewed for the position of Recreation Worker

at the JTDC.  Per her e-mail, plaintiff appeared at the Juvenile Temporary Detention Center  for

the interview.  He was interviewed for the position of "Recreational Worker" by two "Team

Leaders."   These persons told Plaintiff that the position was not available.  Plaintiff asked if the

position of "Assistant Team Leader" was available and was told the only position available was a

position of Juvenile Counselor.   Plaintiff informed them that he would accept position.  He was

questioned as to his previous employment at the Cook County Juvenile Temporary Detention

Center, his experience there and why he was laid off.  On June 22, 2009 plaintiff received a letter

from Carrie Hegenderfer which stated that though she was impressed with his skills, they were

"mov[ing] forward with other candidates."   qualified for that position, they had selected

someone else.

29.     County postings on the Internet at CareerBuilder.com show that the positions of

Assistant Team Leader, Juvenile Detention Counselor, and Recreation Worker, were open as of

June 2, 2009.

30.     Plaintiff contacted Felecia Watson by email, who promised plaintiff she would

investigate the interview statements and the circumstances surrounding same in an email sent

July 20, 2009.   Since that email, plaintiff has not received any further response from Felecia

Watson to date.

6

31.     The United States District Court for the Northern District of Illinois, in the case

titled *Michael L. Shakman, et al. v. City of Chicago, et al.*, No. 69 C 2145, Judge

Wayne R. Andersen, issued an order stating in pertinent part as follows:

> * * *Until he was laid-off in 2007, Mr. Coleman was one of four floor
> managers at the JTDC.   When Mr. Coleman began the floor manager
> position, it was classified as a Grade 18, Administrative Assistant IV
> position.  In 2001, the floor manager position was reclassified as a Grade
> 20 position.
>     During the course of her investigation, the CA [Compliance
> Administrator] found evidence of tension between the floor managers and
> their supervisor, Supervisor B, and the JTDC Bureau Chief.  The tensions
> stemmed from the floor managers' positive relationship with the JTDC
> Superintendent, who had a different political affiliation than the Bureau
> Chief and Supervisor B.  The CA also found evidence that Supervisor B
> pressured Mr. Coleman to purchase fundraising tickets for form Cook
> County President John Stroger.
>     Shortly after the Bureau Chief was appointed as the JTDC
> Superintendent, he eliminated all four floor manager positions under the
> guise of budget cuts.   The CA determined that Mr. Coleman was harmed
> by his lack of political considerations and that the floor manager positions
> were eliminated, in part, because of unlawful political considerations by
> the new JTDC Superintendent."  (Doc. 1089.)

32.     Defendant Cook County violated the *Shakman* Decree and continues to violate the

Decree by intentionally using a political reason or factor to choose other candidates over

Coleman despite his superior qualifications, experience, and skills.

33.     These defendants have continued to engage in a pattern and practice of violating

the *Shakman* Decree.

34.     As a result of these defendants' actions, Plaintiff has suffered loss of income and

benefits, endured deep emotional pain and suffering, humiliation, and incurred attorneys' fees

and expenses.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.   Find that the defendants are in contempt of this Court, and assess an appropriate punishment therefore;

B.   Enter a preliminary and a final injunction directing defendants to place Plaintiff in the position of Team Leader or other speciality assignments, all of which he has performed with ability in the past, and prohibit defendants from retaliating and continuing to retaliate against plaintiff in any way because of the exercise of his First Amendment rights;

C.   Award plaintiff back pay and front pay and all back contributions to IRAs, 401ks, pension plans of any nature;

D.   Award plaintiff compensatory damages, costs and disbursements, and his reasonable attorney's fees;

E.   All other damages available under the provisions of the *Shakman* Decree and/or as otherwise provided by law, fees and costs; and

F.   Grant plaintiff such other and further relief as the Court deems just.

## COUNT II
### (42 U.S.C. § 1983, First Amendment v. Cook County, Fairman and Gilmore, Chief Judge and Dunlap)

17.   Plaintiff realleges and incorporates by reference paragraphs 1 - 16  above as if fully set forth herein.

18.   At all times relevant hereto, Defendants Cook County, J. W. Fairman, Kim David Gilmore, the Chief Judge and Dunlap acted or have acted as employer, supervisor and final policy maker.

19.   By defendants' actions, plaintiff suffered compensable injury and harm as a result of the denial of rights guaranteed to him pursuant to the First Amendment to the United States Constitution.

20.   Defendants intentionally subjected plaintiff to unequal and retaliatory treatment by denying him promotions, denying him preferential or normal rehire, in violation of the First

Amendment and treating him in an overall disparate manner.

21.     Defendants have acted under color of state law at all material times hereto.

22.     The conduct of defendants violated plaintiff's rights to free speech and free association guaranteed by the First Amendment to the Constitution.

23.     The actions of the defendants were intentional, willful, and malicious and/or in reckless disregard of plaintiff's rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

24.     The aforementioned conduct of defendants has resulted in damages to plaintiff, including but not limited to loss of pay, loss of benefits, emotional anguish, loss of job advancement, pain and suffering, humiliation, and embarrassment.

**Prayer For Relief**

WHEREFORE, Plaintiff respectfully requests that this Court grant him the following relief:

A.     All wages and benefits plaintiff would have received but for the First Amendment violations, including but not limited to back pay, front pay, pre-judgment interest, and reinstatement into his position;

B.     Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by defendants' conduct;

C.     A permanent injunction enjoining defendants from engaging in the practices complained of herein;

D.     A permanent injunction requiring that defendants adopt employment practices and policies in accord with and in conformity to the requirements of 42 U.S.C. § 1983;

E.     A declaratory judgment that defendants' actions violate 42 U.S.C. § 1983;

9

F.      The Court retain jurisdiction of this case until such time as it is assured that defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.      Punitive damages as allowed by law against all individual defendants;

H.      An award of reasonable attorney's fees, costs, and litigation expenses; and

I.      Such other relief as the Court may deem just or equitable.


Respectfully submitted,
RICKEY COLEMAN

By:    /s/ John Thomas Moran, Jr.
One of Plaintiff's attorneys.


John Thomas Moran, Jr. (#1954822)
The Moran Law Group
309 West Washington Blvd.
Suite 900
Chicago, Illinois 60606
Tel: (312) 630-0200
Fax: (312) 630-0203
j.t.moran@moranlawgroup.com