**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICKEY COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 2388 |
| | ) | |
| v. | ) | Judge Samuel Der-Yeghiayan |
| | ) | |
| COUNTY OF COOK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS EARL DUNLAP AND
THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Earl Dunlap, the court-appointed Transitional Administrator of the Cook County Juvenile Temporary Detention Center, and the Chief Judge of the Circuit Court of Cook County, Illinois, by their attorney Anita Alvarez, Cook County State's Attorney, through her assistants Kent S. Ray and Pat Smith, move this Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss both counts of Plaintiff Rickey Coleman's Second Amended Complaint. In support of their motion, Dunlap and the Chief Judge state as follows:

**A. INTRODUCTION**

On April 18, 2010, Plaintiff filed his initial complaint in this action relating to his termination from the Cook County Juvenile Temporary Detention Center ("JTDC") in March 2007 and his subsequent inability to be rehired into any position at the JTDC. [Docket # 1] Plaintiff alleged that the named defendants violated the "*Shakman* Decree" (Count I) and asserted that the defendants violated Plaintiff's Section 1983 First Amendment rights (Count II). Plaintiff thereafter twice amended his complaint, each time leaving his basic allegations

unchanged but with each amendment adding additional defendants. [Docket ## 4, 15] In his most recent pleading, the Second Amended Complaint [Docket # 15], Plaintiff has added as defendants **Earl Dunlap ("Dunlap")**, a private individual whom the United States District Court for the Northern District of Illinois has appointed Transitional Administrator over the JTDC and who has operated the JTDC pursuant to court order since such appointment, and **the Chief Judge of the Circuit Court of Cook County, Illinois ("the Chief Judge")**, a position currently held by Judge Timothy C. Evans, a State of Illinois official to whom the operational responsibility for the JTDC will transfer upon the conclusion of the work of the Transitional Administrator.

Pursuant to this Court's orders relating to the appointment of Dunlap as the Temporary Administrator of the JTCD, Dunlap has immunity from liability. As a State of Illinois official, the Chief Judge has Eleventh Amendment immunity from suit. Furthermore, neither Dunlap nor the Chief Judge can be sued under the *Shakman* Decree or Section 1983 with respect to their responsibilities for the JTDC. Plaintiff also fails to state a claim under Section 1983 upon which relief may be granted. Additionally, Plaintiff's claims are untimely. For these reasons, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

### B. Background

#### 1. Earl Dunlap

After years of litigation challenging the conditions of confinement at the JTDC, the United States District Court for the Northern District of Illinois effectively assumed control of the facility and in August 2007 appointed its own agent to operate the JTDC. *See* Order, *Doe v. Cook County,* No. 99 C 3945 (N.D. Ill. August 14, 2007) (Nordberg, J.) [Docket # 330], attached as Exhibit A hereto ("the Appointment Order"). Among other things, in its Appointment Order

this Court named Earl Dunlap to be the Transitional Administrator ("TA") of the JTDC. Exhibit A at ¶ 4.[1] As the Transitional Administrator, Dunlap is "an agent of this Court . . . ." Exhibit A at ¶ 2. The Court granted the Transitional Administrator exhaustive responsibility to run the JTDC, including, among other things, "[t]o oversee, supervise, and direct all management, administrative, financial, contractual, personnel, security, housing, custodial, purchasing, maintenance, technology, health services, mental health services, food and laundry service, recreational, educational and programmatic functions relating to the operation of the JTDC . . . ." Exhibit A at ¶ 5.b. The responsibility granted to the Transitional Administrator also includes "[t]he power to establish personnel policies; to create, abolish, or transfer positions; and to hire, terminate, promote, transfer, and evaluate management and staff of the JTDC." Exhibit A at ¶ 6.c.

In recognition of the fact that Dunlap is serving as an agent of this Court while functioning as the JTDC Transitional Administrator, the Court granted Dunlap absolute immunity: "As this Court's representative, appointed to bring the JTDC into substantial compliance with [the Court's orders], the TA shall have absolute immunity from liability." Exhibit A at ¶ 7.h. On June 22, 2010, on Dunlap's own motion the United States District Court for the Northern District of Illinois clarified the scope of its grant of absolute immunity to the Transitional Administrator and replaced paragraph 7.h with the following language (which is quoted in relevant part):

> Effective August 14, 2007, the TA and his staff shall have the status of officers and agents of this Court and as such shall be vested with the same immunities as vest with this Court.

---

[1] "In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment. *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000); *GEC Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997)("This exception allows courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard.")

*See* Order, *Doe v. Cook County,* No. 99 C 3945 (N.D. Ill. June 22, 2010) (Holderman, J.) [Docket # 587], attached as Exhibit B hereto.

### 2. The Chief Judge

The office of the Chief Judge is one established under the Illinois Constitution. Ill. Const. Art.VI, § 7(c). The Chief Judge is an official of the State of Illinois and he is tasked with administering his court. *Id.* The Chief Judge reports to the Illinois Supreme Court. *Id.* at § 16. In its Appointment Order, the United States District Court ruled that the Chief Judge will assume the operational and administrative authority over the JTDC, but only after the Transitional Administrator has deemed it ready for such turnover and such authority has actually been transferred to the Chief Judge. Exhibit A at ¶ 11. Plaintiff has pled no facts alleging that any of the conditions precedent to the Chief Judge obtaining operational and administrative control over the JTDC have occurred and the JTDC remains under the operational and administrative authority of the Transitional Administrator.

### C. **STANDARD FOR MOTION TO DISMISS**

In determining the propriety of dismissal under Rule 12(b)(6), a court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000). Courts, however, need not accept as true mere "legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002); *see also Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Bare legal conclusions attached to narrated facts will not suffice to state a claim for which relief may be granted. *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985).

The pleading standard recently has been addressed by the United States Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). In *Iqbal,* the Court reaffirmed its reasoning in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), clarifying that it is not sufficient for a plaintiff to allege merely a conceivable claim for relief; a plaintiff instead must plead a plausible claim. *Iqbal*, 129 S. Ct. at 1952. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted lawfully." *Id*. at 1949. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. A pleading that contains allegations of a mere possibility of misconduct does not establish that the pleader is entitled to relief and must be dismissed. *Id.* Plaintiff's Second Amended Complaint fails to meet this pleading standard.

### D. ARGUMENT

**1. The Second Amended Complaint Must Be Dismissed as to Earl Dunlap Because of His Absolute Immunity from Suit.**

When it appointed Earl Dunlap the Transitional Administrator of the JTDC, this Court conferred upon Dunlap "absolute immunity" from suit in connection with his work at the JTDC. *See* Exhibit A at ¶ 7.h; Exhibit B. Given the scope of his oversight responsibilities at the JTDC, such immunity certainly covers the conduct alleged in Plaintiff's Second Amended Complaint.

Plaintiff was laid off from his job in March 2007, five months before Dunlap was appointed by the Court to the Transitional Administrator position. Accordingly, even without immunity, Dunlap could have no liability with respect to Plaintiff's claims that pre-date Dunlap's August 14, 2007, appointment. And while Dunlap was the Transitional Administrator after August 2007 during Plaintiff's alleged efforts to obtain rehire by the JTDC, the hiring of employees at the JTDC and the establishment of personnel policies are specific court-ordered

areas of Dunlap's responsibility, for which the Court has granted him immunity. Exhibit A at 5.b and 6.c.

On June 22, 2010, the Court granted Dunlap's motion to modify the immunity clause of the Appointment Order, thereby clarifying the broad scope of Dunlap's immunity as "the same immunities as vest with this Court." Exhibit B; *see also* Dunlap's Motion at *Doe v. Cook County*, Case No. 99 C 3945 [Docket # 579]. Absolute judicial immunity has long been recognized by the Seventh Circuit; so long as a judge's conduct falls within his jurisdiction and the acts are within his judicial capacity, the judge is entitled to absolute immunity from suit. *Lawrence v. Conlon*, 1995 U.S. Dist. LEXIS 4463, *9 (N.D. Ill. Mar. 31, 1995) (Nordberg, J.) The June 22, 2010, order noted that Dunlap and his staff serve as "officers and agents of this Court." By ruling that Dunlap has the same immunities as the Court, the order confirmed Dunlap's absolute immunity for all of his actions that are within his jurisdiction and capacity as the Transitional Administrator.

Plaintiff's claims relate to his termination by the JTDC and the alleged decision(s) not to rehire him. Second Amended Complaint at ¶¶ 18-30. The Appointment Order specifically assigns Dunlap the responsibility for, among other things, establishing personnel policies, creating, abolishing, or transferring positions, and hiring and terminating JTDC staff. Exhibit A at ¶ 6.c. As such, even with respect to the conduct that Plaintiff alleges occurred after Dunlap's appointment to the Transitional Administrator position, those claims fall directly into Dunlap's judicial assignment of authority, for which he has been granted absolute immunity. The Court accordingly lacks subject matter jurisdiction over the claims against Dunlap or, alternatively, the Second Amended Complaint should be dismissed as to Dunlap for failing to state a claim for which relief can be granted.

6

## 2. Plaintiff's Claim Against the Chief Judge, a State Officer, Is Barred by the Eleventh Amendment to the United States Constitution.

Plaintiff does not specify whether he brings his claims against the Chief Judge in his official or individual capacity. The Seventh Circuit has observed that "[a] Section 1983 complaint that fails to specify the capacity in which the defendants are being sued is ordinarily construed to be against them in their official capacity." *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997). There are no allegations contained in Plaintiff's Second Amended Complaint that the Chief Judge was acting other than in his official capacity. Because Plaintiff's claims against the Chief Judge are in reality claims against the State of Illinois itself, his claims are barred by the Eleventh Amendment. *See Hernandez v. Joliet Police Department*, 197 F.3d 256, 264-65 (7th Cir. 1999), citing *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994), and *Ingemunson v. Hedges*, 133 Ill. 2d 364, 549 N.E.2d 1269, 1272 (Ill. 1990).

Official capacity suits for money damages against state officials are barred by the Eleventh Amendment to the United States Constitution, absent wavier by the state or a valid congressional override. *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945); *Kroll v. Board of Trustees of the University of Illinois*, 934 F.2d 904, 907-08 (7th Cir. 1991). The Chief Judge of the Circuit Court of Cook County is a State official. Ill. Const. Art.VI, § 7(c); *Doyle v. Chief Judge of the Tenth Judicial Cir.*, 2007 U.S. Dist. LEXIS 60223, *20-22 (C.D. Ill. Aug. 16, 2007) (Mihm, J.); *Arnold v. County of Cook*, 2001 U.S. Dist. LEXIS 22647, *2-3 (N.D. Ill. Sept. 25, 2001)(Gottschall, J.). The Chief Judge is entitled to Eleventh Amendment immunity from suit in this matter. The Court therefore lacks subject matter jurisdiction over the claims against the Chief Judge or, alternatively, the Second Amended Complaint should be dismissed as to the Chief Judge for failing to state a claim for which relief can be granted.

### 3. Dunlap and the Chief Judge Are Not Parties to and Cannot Be Sued Under the *Shakman* Decrees and the *Shakman* Supplemental Relief Order.

In his Second Amended Complaint, Plaintiff claims that the defendants, including Dunlap and the Chief Judge, violated the "*Shakman* Decree," asserting specifically that Dunlap and the Chief Judge are among the "institutional defendants" that are subject to the orders and commitments that have resulted from the thirty-plus year litigation. Second Amended Complaint at ¶¶ 1, 18. This assertion is legally insupportable. The two decrees and Supplemental Relief Order that issued in the *Shakman* case with respect to certain Cook County-affiliated defendants pertains to neither Dunlap, as the court-appointed Transitional Administrator for the JTDC, nor the Chief Judge of the Circuit Court of Cook County, a State of Illinois official.

In 1972, certain officers of Cook County entered into a consent decree in the case of *Shakman v. The Democratic Organization of Cook County*, No. 69 C 2145 (N.D. Ill. May 5, 1972) (Marovitz, J.), attached as <u>Exhibit C</u>. The 1972 consent decree applies to the President of the Board of Commissioners for Cook County, the Cook County Assessor, the Cook County Clerk, and the Clerk of the Circuit Court of Cook County, among other public defendants including the Governor of the State of Illinois and the Mayor of the City of Chicago. Exhibit C at ¶ C. Those named parties committed to a prohibition against "conditioning, basing or knowingly prejudicing or affecting any term or aspect of government employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." Exhibit C at ¶ E(1).; *see also Everett v. Cook County*, 2010 U.S. Dist. LEXIS 30779, at *19-20 (N.D. Ill. March 30, 2010) (Kendall, J.). Cook County and others later entered into a second consent decree in the *Shakman* litigation, which extended the prohibitions of the 1972 consent decree to job applicants. *Shakman*, No. 69 C 2145 (N.D. Ill. Jan. 7, 1994)

(Williams, J.), attached as <u>Exhibit D</u>. Cook County, the President of the Cook County Board of Commissioners, and officers, agents and employees who report to the Board President are subject to this second consent decree. Exhibit D at ¶ C. The Chief Judge of the Circuit Court of Cook County is not identified as a "person bound" by or subject to either consent decree. The consent decrees also did not apply to the Transitional Administrator because one would not be appointed for another thirteen years. Exhibit D.

In February 2007 Judge Wayne Anderson issued a "Supplemental Relief Order for Cook County" ("SRO"), establishing a procedure for adjudicating claims of political discrimination and setting criteria by which Cook County could establish substantial compliance with the previous consent decrees. *Shakman*, No. 69 C 2145 (N.D. Ill. Feb. 2, 2007) (Anderson, J.) [Docket # 587], attached as <u>Exhibit E</u>. The SRO is binding upon Cook County. *Id.* Nowhere in the terms of the SRO, however, is there any indication that the SRO is binding upon Dunlap as the court-appointed Transitional Administrator of the JTDC or the State of Illinois Office of the Chief Judge of the Circuit Court of Cook County.

Earl Dunlap is an agent of the United States District Court. Appointment Order, Ex. A. The Chief Judge is a constitutionally-created office of the State of Illinois. Ill. Const. Art.VI, § 7(c). Neither is an official or employee who reports to the President of the Cook County Board of Commissioners and neither is a Cook County officer or employee. Therefore Dunlap and the Chief Judge are not parties to the *Shakman* litigation and are not "institutional defendants" covered by the orders.

### 4. Dunlap and the Chief Judge Cannot Be Sued Under Section 1983.

Count II, Plaintiff's claim against Dunlap and the Chief Judge under Section 1983 of the Civil Rights Act and the First Amendment of the United States Constitution, also must be

9

dismissed because neither Dunlap nor the Chief Judge are subject to suit with respect to Plaintiff's claims.

Actions of the federal government and its officials are beyond the purview of Section 1983, which applies only to state actors acting under color of state law. *See District of Columbia v. Carter*, 409 U.S. 418, 423-25 (1973); *Benson v. United States*, 969 F. Supp. 1129, 1135 (N.D. Ill. 1997). Dunlap is an agent of the United States District Court and his authority to act in his oversight of the JTDC derives exclusively from this federal Court and each of his duties and responsibilities flow from an order of this Court. Ex. A at ¶ 2. Even without his absolute immunity, Dunlap cannot be sued under Section 1983.

The Office of the Chief Judge is an office of the State of Illinois, not of Cook County, and is a component of state government. Ill. Const. Art.VI, § 7(c). The Chief Justice of the Illinois Supreme Court is tasked with the general supervision and administration of <u>all</u> courts in the state. Ill. Const. Art.VI, § 16. The Eleventh Amendment generally precludes Section 1983 suits against state officials in their official capacities because the state is the real party in interest and states themselves cannot be sued under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Suduth v. Donnelly*, 2009 U.S. Dist. LEXIS 27960, *14 (N.D. Ill. April 1, 2009)(Kendall, J.), *aff'd*, 2010 U.S. App. LEXIS 5292 (7th Cir. 2010); *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n. 54 (1978).

Further, the Appointment Order provides that the Chief Judge has no operational authority over the JTDC until such time as: (1) the parties to the *Doe* case so agree or the Court so orders, or (2) the Transitional Administrator has assessed the capacity of the JTDC to be turned over to the Chief Judge, has obtained the Chief Judge's consent and in fact transitions the functions to the Chief Judge. Ex. A at ¶ 11(b). Plaintiff fails to plead that any of these

prerequisites of the Chief Judge obtaining administrative and operational control over the JTDC have been satisfied.

### 5. Plaintiff Fails to Plead a *Monell* or Personal Capacity Claim Against Either Dunlap or the Chief Judge.

Even if Dunlap and the Chief Judge were subject to suit under Section 1983 in their official capacity, Plaintiff's pleading also is defective in establishing municipal liability under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). It is well-settled that governmental employees cannot be held liable in their official capacities under Section 1983 unless a plaintiff can show that he suffered injuries of a constitutional magnitude as a result of an official custom, policy or practice. *Monell*, 436 U.S. at 690-91. The Seventh Circuit has outlined what a plaintiff must allege to survive a motion to dismiss in an official capacity suit:

> Case law recognizes three ways in which a municipality's policy can violate an individual's civil rights: (1) an express policy that, when enforced, causes a constitutional deprivation, (2) a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law," or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority."

*McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)(quoting *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994))(citations omitted).

The Second Amended Complaint contains no claim of either an express policy or widespread practice. Additionally, Plaintiff's claim in ¶ 18 of his Second Amended Complaint that the Chief Judge is a "final policy maker" with respect to the JTDC is inconsistent with the express terms of the Appointment Order and is therefore legally incorrect. "[W]hen . . . the complaint names an official in his official capacity (making it a suit against the office, that is, the governmental entity itself) without a clue as to what the authority of the office is or what policy of the office believes violated his rights, the suit is properly dismissed on the pleadings."

*Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)(citations omitted). Further, the courts have rejected a *respondeat superior* theory of liability under Section 1983. *Monell*, 436 U.S. 658, 691 (1978); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994).

Additionally, even if this were a Section 1983 claim against either Earl Dunlap or Judge Evans in his personal capacity, the Second Amended Complaint does not state a claim against either. In order to survive a motion to dismiss, a plaintiff must allege that a defendant had some direct personal responsibility and involvement for the alleged constitutional deprivation in order for liability to attach under Section 1983. *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998); *Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir. 1994); *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). A plaintiff must plead that a defendant acted or failed to act with deliberate or reckless disregard of the plaintiff's rights or that the violation occurred at his direction or with his knowledge and consent. *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986).

Plaintiff fails to allege any affirmative link between the alleged constitutional violation and Dunlap and Judge Evans. Plaintiff makes a general (and legally incorrect) statement that Judge Evans "acted as employer, supervisor and final policy maker" with respect to the JTDC. Second Amended Complaint at ¶ 18. Plaintiff also asserts generally that all of the defendants denied him promotions and rehire, constituting unequal and retaliatory treatment. Second Amended Complaint at ¶ 20. Plaintiff alleges no facts, however, as to either Dunlap's or Judge Evans' knowledge or involvement with respect to any of the alleged conduct, ignoring that the Appointment Order had yet to issue as of the date of Plaintiff's layoff. Even if persons supervised by Dunlap or Judge Evans violated Plaintiff's constitutional rights, Plaintiff asserts no allegations that they either knew or should have known of such actions. Count II does not state

even a possible, let alone probable, claim against Dunlap or the Chief Judge. For all of these reasons, Count II should be dismissed as to these defendants.

### 6. Even if Dunlap and the Chief Judge Were Subject to *Shakman*, Plaintiff's *Shakman* Claim Is Untimely.

The *Shakman* decrees and SRO do not apply to Dunlap or the Chief Judge. Yet even if they did, Plaintiff's S*hakman* claim against those two defendants is fatally flawed since it was not timely filed. The Supplemental Relief Order, which is attached as Exhibit E, sets forth the procedure for asserting claims that address alleged misconduct occurring after the February 2, 2007, entry of the SRO. Specifically, the SRO requires that "a Complainant who wishes to seek to recover damages suffered as a result of unlawful political discrimination must make a complaint with the [Inspector General's Office] or file suit within one hundred twenty (120) days after the date on which the Complainant learned or should have learned of the unlawful conduct." SRO, Exhibit E at 18-19. The procedures contained within the SRO provide the "exclusive remedy" for claims of *Shakman* class members seeking relief for violations of the *Shakman* decrees. Exhibit E at 3.

As a class member in the *Shakman* case, Plaintiff has previously filed a claim regarding his layoff and certain of his alleged attempts to obtain reemployment with the JTDC and received a judicial determination on that claim. On April 28, 2009, Judge Anderson ruled on Plaintiff's objections to the *Shakman* Compliance Administrator's findings with respect to his layoff-related claims. *Shakman,* No. 69 C 2145 (N.D. Ill., Apr. 28, 2009) [Docket # 1089], attached as Exhibit F. Judge Anderson found, among other things, that Plaintiff's position was eliminated in part due to political considerations.[2] Judge Anderson reviewed the Compliance

---

[2] A filing by the *Shakman* Compliance Administrator in the case confirms that Plaintiff's previous claim related to his layoff and inability to be rehired at the JTDC. "Brief Filed With Respect to Claimant Ricky

13

Administrator's findings with respect to Plaintiff's claims and awarded damages to Plaintiff in the sum of $25,000, which covered a time period extending through August 2008. Exhibit F. In so ruling, Judge Anderson increased the Compliance Administrator's award to Plaintiff by nearly $10,000. Exhibit F. Plaintiff thereby obtained his "exclusive relief" well before filing his current suit.

Plaintiff claims that he "filed a Post-SRO complaint form with the Office of the Cook County Compliance Administrator ("CA") by certified mail on August 25, 2009, received August 27, 2009." Second Amended Complaint at ¶ 7. (Nowhere in his pleading does Plaintiff disclose that he previously received relief from Judge Anderson for the very claims he brings in this action.) The Second Amended Complaint contains only one alleged wrong that falls within the one hundred and twenty days of the August 27, 2009, filing of his claim: the incident alleged in Paragraphs 28 through 30 of the Second Amended Complaint involving Plaintiff's claimed eligibility for a Recreation Worker position at the JTDC. Second Amended Complaint at ¶¶ 28-30. All other allegations fall far outside the one hundred twenty day filing period.

### 7. Plaintiff's Section 1983 Claim Is Untimely.

The law is clear that in Section 1983 cases that arise in the State of Illinois, a two-year limitations period applies. *Kalimara v. Illinois Department of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989); *O'Toole v. Village of Downers Grove*, 1989 U.S. Dist. LEXIS 4669, *4 (N.D. Ill. Apr. 21, 1989)(Kocoras, J.). In the present suit, filed on April 18, 2010, Plaintiff seeks to fold into his Section 1983 claim acts, such as his layoff, that occurred more than three years prior to the filing of his suit. Defendants Dunlap and the Chief Judge were not added to the suit until July 27, 2010. Count II of the Second Amended Complaint, including those paragraphs

---

Coleman's Objection To Notice Of Determination," *Shakman,* No. 69 C 2145 (N.D. Ill., Oct. 13, 2009) [Docket # 1377-4], attached as <u>Exhibit F</u>.

incorporated therein by reference, alleges no facts or claims that fall within this two-year limitations period. Count II of the Second Amended Complaint should be dismissed as to Dunlap and the Chief Judge.

### E. CONCLUSION

For the foregoing reasons, this Court should dismiss, with prejudice, Plaintiff's Second Amended Complaint against Earl Dunlap and the Chief Judge of the Circuit Court of Cook County, Illinois.

                Respectfully submitted,
                ANITA ALVAREZ
                Cook County State's Attorney

By: /s/ Kent S. Ray
     Kent S. Ray, # 6188633
     Pat Smith
     Assistant State's Attorneys
     69 West Washington,
     Suite 2030
     Chicago, IL 60602
     (312) 603-1427