IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICKEY COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 2388 |
| | ) | |
| v. | ) | Judge James F. Holderman |
| | ) | |
| COUNTY OF COOK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF
EARL DUNLAP AND THE CHIEF JUDGE
OF THE CIRCUIT COURT OF COOK COUNTY'S MOTION TO DISMISS**

Defendants Earl Dunlap and the Chief Judge of the Circuit Court of Cook County, Illinois have moved this Court for dismissal of the two employment-related claims against them arising out of alleged conduct at the Juvenile Temporary Detention Center ("JTDC"). In his Combined Response Plaintiff agrees to dismiss the Chief Judge but continues to argue that Dunlap can be found liable under the *Shakman* decrees and § 1983. In so arguing Plaintiff fails to grasp Dunlap's unique position as the court-appointed Transitional Administrator of the JTDC and the unprecedented nature of the relief he seeks against Dunlap. This reply brief addresses certain of the issues raised in Plaintiff's Combined Response.

**I. Claims Against the Chief Judge of the Circuit Court of Cook County**

The Chief Judge argued in his motion to dismiss that the claims against him should be dismissed because, among other reasons, the operational authority over the JTDC has not, to date, been turned over to him. Plaintiff agrees with the Chief Judge and has indicated in his Combined Response that **"[P]laintiff will seek to dismiss the Chief Judge without prejudice."**

Combined Response at 7 (emphasis supplied); *see also* Combined Response at 5. With the understanding that Plaintiff will dismiss him from this suit, the Chief Judge submits no further reply to the assertions of the Combined Response.

## II. Claims Against Earl Dunlap, Transitional Administrator of the JTDC

### A. Dunlap's Immunity Bars Plaintiff's Claims.

Plaintiff takes issue with this Court's grant of immunity to Dunlap and Dunlap's invocation of that immunity as a defense to Plaintiff's claims. In particular, Plaintiff implies that the grant of immunity was inappropriate because Plaintiff was not a party to *Doe v. Cook County,* 99 C 3945, in which it was granted. Plaintiff also seems to assert that Dunlap's immunity is limited to Dunlap's judicial functions, perhaps not realizing that Dunlap is not a judge and that he is an administrator with immunity for the decisions made in his office. Plaintiff further observes that the orders granting Dunlap immunity contain indemnification language, incorrectly implying that the Court must not have meant to grant immunity. Finally, Plaintiff contends that Dunlap's immunity applies only to Plaintiff's damages claims and not to his claims for injunctive relief. Plaintiff's arguments demonstrate a misunderstanding of Dunlap's role as the Transitional Administrator of the JTDC and the protection afforded him by the Court.

The fact that Plaintiff was not a party to the *Doe* case has no bearing on the enforceability of the Court's grant of immunity to whomever holds the position of Transitional Administrator. The whole point of a grant of immunity is to protect a party from <u>future</u> claims, not merely those to which one currently may be a party. Plaintiff's non-participation in the *Doe* case has no bearing on the order of immunity.

The cases Plaintiff cites for his proposition that Dunlap is not immunized with respect to his administrative activities only support Dunlap's position. Dunlap has been granted immunity from suit as the Transitional Administrator of the JTDC. *Doe v. Cook County*, Order (June 22, 2010) (Holderman, C.J.), Ex. B to Memorandum in Support. The extent of the immunity has been defined as "the same immunities as vest with this Court." *Id.* Plaintiff asserts that judges do not have immunity for "administrative acts such as hiring and firing," citing *Forrester v. White*, 484 U.S. 219 (1988). *Forrester*, however, has been legislatively reversed by the enactment of the Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847 (Oct. 19, 1996). *See, e.g., Leclerc v. Webb*, 270 F. Supp. 2d 779, 792-93 (E.D. La. 2003).

Plaintiff invokes *Clinton v. Jones*, 520 U.S. 681 (1997) as further support for his position. In *Clinton*, the United States Supreme Court discussed the concept of immunizing public officials for their official conduct and rejected President Clinton's argument that immunity also should apply to unofficial conduct. The Court explained that immunizing officials for official conduct "serves the public interest in enabling such officials to perform their designated functions effectively without fear that a particular decision may give rise to personal liability." *Id.* at 693. Consistent with that rationale, and flatly inconsistent with Plaintiff's position, the Court noted that "an official's absolute immunity should extend only to acts in performance of particular functions in his office. . . . As our opinions have made clear, immunities are grounded in 'the nature of the function performed, not the identity of the actor who performed it.'" 530 U.S. at 694-95. Under this statement of immunity, Dunlap should be immunized from Plaintiff's claims.

Dunlap is not a judge and he performs no judicial functions. He has no need for immunity for any judicial acts and to interpret the order in that manner would make no sense.

3

Instead Dunlap requested, and was granted, immunity in connection with his acts and decisions that are within the scope of his role as the Transitional Administrator. Dunlap's court-appointed duties include the power to "hire, terminate, promote, transfer and evaluate management and staff at the JTDC." Ex. A to Memorandum in Support at ¶ 6.c. Dunlap is an administrator, not a judge, and this Court's grant of immunity protects Dunlap from suit for his administrative functions.

Plaintiff also observes that the most recent order clarifying Dunlap's grant of immunity contains indemnification language. Combined Response at 3; Ex. B to Memorandum in Support. Plaintiff, however, fails to explain the relevance of this observation or cite any legal support for his inference that the indemnification language is in some way inconsistent with the grant of immunity. The indemnification in favor of the Transitional Administrator is in no way inconsistent with the grant of immunity; it is merely another safeguard to protect a private citizen in the context of his court-appointed role.

Finally Plaintiff cites *Pulliam v. Allen*, 466 U.S. 522 (1984) for the proposition that judicial immunity does not extend to suits for injunctive relief. Combined Response at 4. *Pulliam,* like *Forrester,* was legislatively reversed by the Federal Courts Improvement Act of 1996. *See Leclerc,* 270 F. Supp. 2d at 792-93 ("The Senate report indicates that the amendment 'restores the doctrine of judicial immunity to the status it occupied prior to [*Pulliam*]' because *Pulliam* had departed from '400 years of common law tradition and weakened judicial immunity protections.'"); s*ee also Gonzalez v. Sharpe*, 2006 U.S. Dist. LEXIS 64375, *8 (N.D.N.Y Sept. 8, 2006) (Scullin, Jr., J.). In addition to citing invalid case law, Plaintiff again seems not to recognize that Earl Dunlap is not a judge—he merely has been granted immunity analogous to that held by a federal judge. Dunlap's immunity arises out of his conduct as the JTDC

4

Transitional Administrator, just as a judge's immunity arises out of the performance of his or her judicial function. The allegations of the Second Amended Complaint relating to Plaintiff's termination from the JTDC and his inability to be rehired fall squarely within Dunlap's administrative responsibilities. The Court accordingly should dismiss Plaintiff's Second Amended Complaint as to Earl Dunlap.

### B. Dunlap Is Not a Proper Defendant to a *Shakman* Claim.

The *Shakman* decrees and Supplemental Relief Order do not apply to an agent of the Court who has temporary administrative responsibility for the JTDC. To the contrary, Dunlap's responsibility is to this Court, and it is up to this Court to determine whether he is performing in a manner consistent with the terms of his appointment order. Ex. A to Memorandum in Response at ¶15. Dunlap does not report to the Cook County Board or the Cook County President.

Plaintiff claims that Dunlap's position has previously been rejected in *Opp v. Devine*, 621 F. Supp. 2d 635 (N.D. Ill. 2009). Nothing in *Opp* supports in any way Plaintiff's argument that the court-appointed Transitional Administrator is subject to suit under *Shakman*. *Opp* involved a terminated Assistant States Attorney's three-count complaint alleging violations of the *Shakman* consent decree and the Age Discrimination in Employment Act as well as a punitive discharge count. The original defendants included the Cook County State's Attorney and the State's Attorney's Office, the County of Cook, the Cook County Board of Commissioners and individual employees of the State's Attorney's Office. On defendants' motion, the Court dismissed all of the defendants other than Cook County. Per the Court, the Cook County Board is a non-suable entity, the State's Attorney and her Office are immune under the 11th Amendment and the individual defendants "cannot be held liable in their individual capacities

for any alleged violations of the *Shakman* consent decrees." *Id.* at 638-39. Plaintiff's characterization of *Opp* in his Combined Response is incorrect.

Plaintiff's comment that "the law generally forbids patronage dismissals," while an unattributed quote from *Opp*, overlooks the fact that Plaintiff's termination in March 2007 pre-dated by five months Dunlap's appointment to the position of Transitional Administrator. As a practical matter, Plaintiff cannot hold Dunlap responsible for his dismissal when he was not even appointed at the time of the alleged violation.

Plaintiff can point to no law, case or order that would support the unprecedented extension of the *Shakman* decrees to Dunlap himself and Count I of the Second Amended Complaint should be dismissed as to Dunlap.

## C. Dunlap Is Not A Proper § 1983 Defendant and Plaintiff Fails to Plead a *Monell* Claim Against Him.

Plaintiff cites a number of United States Supreme Court decisions for the position that Dunlap is a "state actor" for purposes of § 1983 liability. These cases cover various aspects of the three tests that have been utilized to determine whether the conduct of private parties amounts to state action, but are not on point with the current case and do not establish that Dunlap can be sued under § 1983.

First, the joint conduct between a private party and the state can lead to potential § 1983 liability for the private actor. In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), the Court found that a private party who violates another party's constitutional rights by seizing his property pursuant to statutory procedures, and who jointly engages with state officials to do so, can be liable under § 1983 jointly with the state. *Id.* at 941-42. If the deprivation is the result of the exercise of a right or privilege created by the state (or a rule of conduct imposed by the state or for whom the state is responsible) <u>and</u> the defendant is fairly described as a state actor, the

conduct can fairly be attributed to the state. *Id.* at 937. The defendant in *Lugar* invoked state assistance to attach the plaintiff's personal property and the Court found that this was sufficient to create § 1983 liability. *Id.* Similarly, the defendant private restaurant in *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) was found to have acted as the state when it denied a patron service based upon his race where the restaurant was in a building owned and maintained by a city. The Court found the city and the restaurant to be joint participants in the challenged activity. *Id.* at 725.

Actions by private parties that can be deemed compelled by a state policy also have been found to qualify as state action. The case of *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) involved a claim under § 1983 brought by a plaintiff who was refused service at a restaurant because her table was racially mixed. The Court reversed the award of summary judgment on the § 1983 claim in favor of the restaurant and found that the plaintiff stated a claim of state action since the conduct was based upon a state-enforced custom of segregation. *Id.* at 161-62.

Finally, activities that have traditionally been the exclusive prerogative of the state also have been deemed state action for § 1983 purposes. As the United States Court of Appeals has recognized, "[f]ew activities fall under this category." *Willis v. Georgia Department of Juvenile Justice*, 2007 U.S. Dist. LEXIS 70012 (11th Cir. Sept. 21, 2007). For this test, the receipt of public funds and government regulation does not turn private activities into state action. *Blum v. Yaretsky*, 457 U.S. 991, 1001, 1007-08 (1982) (finding that a state-regulated and -funded nursing home's activities were not state action); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) (a utility company was not acting as a state when it terminated the plaintiff's service, even though the defendant was heavily regulated).

The extension of state action to a private party, however, cannot apply to Dunlap's unique, court-appointed activities as the temporary overseer of the JTDC's administrative activities. Unlike *Lugar* and *Burton*, there is no claim that Dunlap has invoked state rights or privileges with respect to Plaintiff or has conspired or acted with a state agent in connection with Plaintiff. He has no contract with Cook County or any unit of local government and instead is obligated to report directly to the Court. Additionally, the *Adickes* decision does not apply, as there is no state-compelled policy at issue here. Contrary to Plaintiff's argument, Cook County's agreement to the appointment order is in no way like the state-compelled custom of discrimination addressed in *Adickes*. Finally, Dunlap's duties as the Transitional Administrator are not activities that traditionally performed by the state. To the contrary, and as the appointment order makes clear, Dunlap is an agent of this Court. Ex. A to Memorandum in Support at ¶2. His actions as Transitional Administrator are actions of the federal government and do not constitute state action for purposes of § 1983 liability.

With respect to his purported *Monell* claim, Plaintiff's Combined Response concedes that he failed to include the necessary allegations in Count II of his Second Amended Complaint. Combined Response at 16. Plaintiff cannot allege that Dunlap had any personal responsibility for his termination, as Dunlap had not yet been appointed, nor has he asserted that Dunlap acted knowingly or with deliberate or reckless disregard concerning Plaintiff's inability to be rehired at the JTDC. The Second Amended Complaint is fatally deficient as to a § 1983 claim against Dunlap and should be dismissed.

   **D.**  **Plaintiff's *Shakman* and § 1983 Claims Are Untimely.**

The Combined Response asserts a theory of timeliness based upon the forty-five day filing period following the issuance of the Complaint Administrator's notice of rights in an

attempt to dodge the consequences of Plaintiff's late filing. Yet even under this theory, Plaintiff's *Shakman* claim against Dunlap is still time-barred. As alleged by Plaintiff and supported by the docket in this case:

- Plaintiff's post-SRO complaint was received by the Complaint Administrator on August 27, 2009 (Sec. Am. Comp. ¶7);

- The Complaint Administrator issued Plaintiff a "Notice of Rights" on March 2, 2010, under which Plaintiff had forty-five days, or until April 16, 2010, to file suit on his claim (Sec. Am. Compl. at ¶8);

- Plaintiff filed his original complaint in this case on April 18, 2010, in which Dunlap was not named as a defendant [Docket # 1]; and

- Plaintiff added Earl Dunlap as a defendant on July 27, 2010 [Docket #15].

Because Plaintiff fails to plead when he received the Notice of Rights, his *Shakman* claim should be deemed untimely with respect to all defendants. Regardless, because Dunlap was added to the *Shakman* claim only after the expiration of the statute of limitations, the count is certainly untimely with respect to him. As the Seventh Circuit has recognized, a claim against a new defendant may be permitted to relate back to a timely-filed complaint "only if there was an identity mistake as to the proper party to be named and that mistake is chargeable to the new defendant." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 853 (7th Cir. 2008) (affirming the dismissal of a claim against a defendant first named to the suit following the expiration of the limitations period). There is no such contention here.

As for the § 1983 claim, Plaintiff does not even try to argue that he filed it within the two-year limitations period.

9

Plaintiff claims instead that the applicable limitations periods for his claims should be tolled or, alternatively, excused under the continuing violation doctrine. Under equitable tolling, a plaintiff may be excused from complying with the statute of limitations if, despite reasonable efforts, he cannot discover information essential to determining that he has a claim. *Fayoade v. Spratte*, 284 Fed. Appx. 345 (7th Cir. 2008); *see also Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593 (7th Cir. 2001) (adopting the state law of equitable tolling in § 1983 cases and affirming the dismissal of a § 1983 suit on limitations grounds). In § 1983 cases, the equitable tolling doctrine "permits a plaintiff to sue after the statue of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before." *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006). An essential element of a claim of equitable tolling is that the plaintiff has exercised due diligence. *Shropshear*, 275 F.3d at 595. Examples of circumstances where equitable tolling may excuse a plaintiff's failure to file timely is when a plaintiff "is unable to determine who caused his injury, has received inadequate notice, or if the appointment of counsel is pending." *Savory*, 469 F.3d at 673. No acceptable justification exists for the application of the equitable tolling doctrine to the present case and there is no indication that Plaintiff exercised due diligence in seeking the publicly-available information regarding the organizational structure of the JTDC.

The continuing violation doctrine is equally inapplicable. As Judge Posner wrote in *Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008):

> Suppose that year after year, for ten years, your employer pays you less than the minimum wage. That is a continuing violation. But it does not entitle you to wait until year 15 (assuming . . . that the statute of limitations is five years) and then sue not only for the wages you should have received in year 10 but also for the wages you should have received in years 1 through 9. The statute of limitations begins to run upon injury (or, as is standardly the case

>with federal claims, upon discovery of the injury) and is not tolled by subsequent injuries.

The continuing violation doctrine "is not about a continuing, but a cumulative, violation." *Id.* Plaintiff's claim, which includes his 2007 termination and his rejected application for specific positions, is comprised of a series of discreet acts, each of which put him on notice of a possible wrong and injury. Plaintiff cannot now combine these discrete acts to excuse his failure to timely file suit against Dunlap. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 111-12 (2002) (a termination is a final discrete act for purposes of commencing the limitations period).

Plaintiff's claims against Dunlap also should be dismissed as untimely.

### III. Conclusion

For the foregoing reasons, this Court should dismiss, with prejudice, Plaintiff's Second Amended Complaint against Earl Dunlap and the Chief Judge of the Circuit Court of Cook County, Illinois.

>Respectfully submitted,
>ANITA ALVAREZ
>Cook County State's Attorney
>
>By: /s/ Kent S. Ray
>Kent S. Ray, # 6188633
>Assistant State's Attorneys
>69 West Washington,
>Suite 2030
>Chicago, IL 60602
>(312) 603-1427