## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RICKEY COLEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:10-cv-02388 |
| v. ) | |
| ) | Chief Judge James F. Holderman |
| COUNTY OF COOK, a unit of local ) | |
| Government; and ) | Magistrate Judge Morton Denlow |
| EARL DUNLAP, the Transitional ) | |
| Administrator of the Juvenile ) | |
| Temporary Detention Center, ) | Plaintiff Demands Trial by Jury. |
| ) | |
| Defendants. ) | |

## THIRD AMENDED COMPLAINT

Plaintiff RICKEY COLEMAN, by his attorney, John Thomas Moran, Jr. and the Moran Law Group, complains of Defendants as follows:

### NATURE OF THE ACTION

1. Plaintiff RICKEY COLEMAN brings this action for violations of the *Shakman* Decree, and for violations of his civil rights pursuant to 42 U.S.C. § 1983 and 1988, and for declaratory, compensatory, and equitable relief. Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution when Defendants terminated him while not laying off others with less seniority and experience, and failed to offer him preferential rehire despite acknowledging his eligibility for such rehire under county regulations, and where Defendants engaged in other acts of retaliation against him in violation of his rights under the First Amendment to freedom of speech and freedom of association.

**JURISDICTION AND VENUE**

2.  This Court has original subject matter jurisdiction over Plaintiff's *Shakman* Decree and First Amendment claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The *Shakman* Decree also confers jurisdiction with this Court over Plaintiff's *Shakman* Decree claim. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff requests a trial by jury.

3.  Venue is proper in this judicial district in accord with 28 U.S.C.§1391 (b) and (c), as Plaintiff and Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district.

**PARTIES**

4.  Plaintiff RICKEY COLEMAN ("Coleman") is a citizen of the United States who resides in Cook County, Illinois.

5.  Plaintiff was hired by Cook County in 1988 as a Juvenile Detention Counselor. He was terminated at the close of business on March 16, 2007 on three days notice after over 19 years of service from the position of Administrative Assistant IV/Floor Manager. (**Exhibit A** to this Complaint, March 13, 2007 letter from K. Gilmore, Bureau Chief to Plaintiff.)

6.  The County of Cook is a unit of local government in the State of Illinois. J. W. Fairman and Kim David Gilmore, Cook County employees at all times relevant to Plaintiff's layoff and during the time of some of his efforts to secure rehire, were the final decision makers on plaintiff's layoff. In January 1, 2008, the Chief Judge of the Circuit

Court of Cook County, Illinois, via legislative enactment, effectively became the Superintendent of the Juvenile Temporary Detention Center ("JTDC") in Cook County, Illinois, the facility at which plaintiff had been employed. As a consequence of the case of *Jimmy Doe v. Cook County,* ND IL No. 99 C 3945, defendant Earl Dunlap was appointed "Transitional Administrator" of JTDC to "oversee, supervise and direct" all functions relating to the JTDC and remains in that capacity at the will of the Chief Judge.

### Post- SRO Prerequisites

7. Plaintiff filed a Post-SRO complaint form with the Office of the Cook County Complaint Administrator ("CA") by sending the completed form by certified mail on August 25, 2009, and was received by the CA on August 27, 2009.

8. On March 8, 2010, the CA issued plaintiff a "notice of rights" form dated March 2, 2010 which states in pertinent part, that Plaintiff may "pursue his ... claim under applicable law by filing a law suit within forty-five (45) days of receipt of this Notice."

9. This complaint is timely filed within forty-five days of receipt of the CA's notice.

10. Plaintiff filed an earlier claim for "Supplemental Relief" on May 21, 2007, which dealt with pre-termination patronage misconduct by the County. He subsequently received an award.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11. Plaintiff has worked in juvenile corrections since 1988, holding various positions of increasing authority at the Juvenile Detention Center.

12. After obtaining a B.S. degree in Business Administration and a minor in

3

Administration of Justice at William Carey University in Hattiesburg, Mississippi, Coleman played professional baseball in the San Diego Padres organization till 1988. In 1988, he accepted a position as a Juvenile Detention Counselor and remained in that position until 1991 when he was promoted to Caseworker II/III in 1991, supervising subordinate caseworkers.

13. In 1995, plaintiff was promoted to the position of "Group Service Supervisor" supervising over 50 employees and over 175 juvenile residents.

14. In 1998 plaintiff was promoted to the position of "Administrative Assistant IV" and remained in that position until he was terminated in 2007. The job description for this position is attached to this Complaint as **Exhibit B**.

15. At no time was plaintiff in a *Shakman*-exempt position nor was he ever notified that a position that he was holding was being redesignated an exempt position.

16. And, for at least 10 years prior to plaintiff's layoff, he was on leave from a union position, "Juvenile Counselor," with the JDC Superintendents signing off on Plaintiff's Leave of Absence forms since 1991.

17. Plaintiff was informed by letter from defendant Gilmore that due to a reduction in budget, Plaintiff and others were being laid off and that Plaintiff's last day of work was March 13, 2007. (**Exhibit A**, *supra*.) The statement claiming a reduction in budget as the basis for the layoff was false.

18. Shortly after his layoff, Plaintiff discovered that his position had been renamed from "Administrative Assistant IV" to "Floor Manager" without his knowledge. Further, the County created a "new" position of "Team Leader" which consisted of the

same job duties and responsibilities that Plaintiff had as Administrative Assistant IV. These Team Leader positions were discovered to be backfilled by political employees via Internet postings. These positions were never posted in violation of law. In addition, the County created the position of "Assistant Team Leader" which was posted. The CA stated in writing that the reclassification was "well-known" among the employees and Floor Managers. On a motion for reconsideration to the CA, Plaintiff submitted an affidavit from the only Floor Manager not to file a claim with the CA, which denied that he made any such statement as to such knowledge and that he had no knowledge of the claimed job reclassification. (Affidavit of Michael Granberry.) Plaintiff learned around that time that the county budget had in fact increased.

19. Plaintiff's layoff had to be and was approved by J.W. Fairman, a political appointee of the late John Stroger, as well as by Gilmore.

20. Before his layoff, plaintiff had been repeatedly warned by his immediate supervisor, Willie Ross, that "you think you are protected but you are not. You better learn to play the game and support John Stroger." Plaintiff took this to mean he had better buy tickets and donate to Stroger's campaign and the campaigns of his friends and did so.

21. The position that Plaintiff occupied at the time of his layoff on March 13, 2007, was not a "*Shakman* exempt" position.

22. If a position is to be redesignated as "exempt," the affected employee has the right to notice and to be transferred to a non-exempt position. Those rights were never honored in Plaintiff's case. Indeed, as noted above, the superintendents of the JDC continued to sign off on Plaintiff's Leave of Absence forms (from his union position)

without noting any change in classification before and after 2001.

23. The March 7, 2007 letter also informed Plaintiff that he was eligible for preferential rehire and Plaintiff timely requested to be placed on any preferential reinstatement lists by letter to Gilmore and the County dated April 8, 2007. (**Exhibit B**, *supra*.)

24. After his layoff, plaintiff applied for numerous positions with the County of Cook for which he was well-qualified, both before and after the transfer of administration to the Chief Judge. See *infra,* ¶¶ 38-42.

## ADMINISTRATIVE PROCEEDINGS:

25. Among other things, the Consent Decree entered in *Shakman v. Democratic Org. of Cook County*, No. 69 C 2145 (N.D. Ill.), "prohibited the County from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." (February 2, 2007 "Supplemental Relief Order for Cook County", Dkt. 587 ("SRO"), 69 C 2145, at 1. The Decree thus forbids "institutional defendants," *i.e.*, defendant Cook County, and Earl Dunlap as the Cook County Juvenile Temporary Detention Center's Transitional Administrator, from conditioning, basing or retaliating as to any aspect or term of County employment, with respect to one who at the time is a County employee, upon or because of a political reason or factor.

26. The SRO provides "the exclusive remedy for Class Members seeking remedies for claims under the Consent Decrees based on events occurring prior to the

entry of the SRO who fail to opt out." (Memorandum Decision, Case No. 10 C 2388, dkt. 55, p. 15, citing SRO ¶ 4.) The SRO sets out specific claims procedures for "alleged pre-SRO violations" (Section IV) and procedures "for violations occurring after entry of the SRO" (Section V). *Id.*

27. Sometime after Plaintiff requested preferential rehire, he obtained a "Claim Form" for obtaining supplemental relief from Cook County for violations of the *Shakman* Decree and filed it *pro se* with the "Shakman Compliance Administrator." (**Exhibit C** to this Complaint.)

28. In his completed Claim Form, Plaintiff gave specific instances of harassment, favoritism, discrimination and retaliation (including the arbitrary imposition of disciplinary sanctions against those not financially or otherwise supporting the Stroger administration and his appointed head of the Juvenile Detention Center. See **Exhibit C**.

29. Plaintiff further stated, among other things, in his Claim Form that "the four (4) Administrative Assistant IV positions previously held by me, Granberry, Collier and Farmer were given to politically affiliated staff persons Tony Barone, Carolyn Rice, Vanessa McCain and Delores Cornelius. These positions were not posted. These individuals have significantly less seniority and qualifications. The previous administrative staff had over 95 years of experience."

30. In response to what his damages were, Plaintiff wrote that because of filing the Claim Form, he feared reprisal and requested he be reinstated for whatever time ("allowed time needed") was necessary for eligibility for full retirement and benefits, and asked for money damages in the sum of $490,000.00.

31. By letter dated September 23, 2008, the Compliance Administrator ("CA") advised Plaintiff that 209 claims had been filed "alleging illegal patronage by Cook County. Of those, more than fifty (50) per cent of them, 108 claims, were found to be compensable. The Compliance Administrator was bound by the Supplemental Relief Order ("SRO") to consider only those claims which occurred during a specified time period and alleged wrongful acts committed by entities covered by the allegations. * * *" A "Notice of Determination" attached to the letter stated that Plaintiff had been awarded $15,500.00. (A copy of the CA's letter and Notice of Determination is attached as **Exhibit D** to the Complaint.)

32. On October 30, 2008, Plaintiff filed his "Objection" to the Notice of Determination, describing his inability to find comparable employment, and noting that his pay in his last year was $69,000.00. (A copy is attached as **Exhibit E** to the Complaint.)

33. On March 4, 2009, the CA filed a Brief responding to Plaintiff's Objection (attached as **Exhibit F** to the Complaint). In paragraph 7 of the Brief, the CA reveals that the award was *only* for overtime based on the refusal of the County to provide overtime documents. "The floor managers were required to be on call 24 hours a day, seven days a week for one out of every seven weeks. The floor managers were previously compensated for these duties through overtime." In paragraph 8 of its Brief, the CA acknowledges "political tension" but claimed the Plaintiff's "floor manager position was not equivalent to the AA IV positions that were retained in the budget cuts. In addition, the CA determined that Claimant was denied overtime compensation, at least in part, based on political

8

considerations."

34. On December 9, 2008, the CA wrote to Plaintiff asking him to consider withdrawing his Objection to Notice of Determination (attached as **Exhibit G**).

35. On April 28, 2009, Judge Andersen entered an Order enforcing Plaintiff's Claim (attached as **Exhibit H**), but increased the award to $25,000.00, noting in the third paragraph on page 2 that the "CA requested, but never received, overtime documents from the JTDC. The CA correctly drew a negative inference from the JTDC's failure to produce the overtime documents." The time period on which the overtime claim was based began, pursuant to the SRO, in August of 2004. (First line of page 2). The Order further stated: "If Mr. Coleman wishes to pursue compensation for a claim related to events that occurred after February 2, 2007 he must file a claim with the Compliance Administrator, Mark Vogel." (Order, p. 3.) The official docket in the *Shakman* case indicates that a copy of the decision was *mailed* by "the judge's staff on April 28, 2009." (Case No. 69 C 2145, dkt. 1089.) It was not received until the following week, in early May, 2009. Neither Plaintiff nor his attorney's name or address appear on the mailing list. Plaintiff heard from a former co-worker that orders had been entered on their objections and he called the CA office and told them he had never received anything and he went to the CA's office and picked up a copy in May.

36. On August 25, 2009, Plaintiff filed a claim with the CA via USPS Certified Mail, (delivered on August 27, 2009), for unlawful political discrimination after February 2, 2007, in compliance with Judge Andersen's orders (attached as **Exhibit I**).

37. In his Claim Form under "damages," Plaintiff stated he had no income from

9

March 16, 2007 to March 27, 2009 but had been making approximately $70,000.00 a year plus benefits, and that he was presently earning $27,000.00 a year and absorbed a 30% penalty for having to claim his pension.

### PLAINTIFF'S LAYOFF JOB SEARCH WITH THE COUNTY AND JTDC:

38. After his layoff, plaintiff applied for numerous positions with the County of Cook and the JDC and JTDC for which he was well-qualified.

39. Plaintiff, since his layoff, has applied for the following positions:

- Recreational supervisor - applied June 21, 2007;
- Group Service supervisor - applied June 21, 2007;
- Recreation Worker - applied June 4, 2009;
- Juvenile Counselor - applied June 4, 2009;
- Assistant Team Leader - April, 2008.

40. Plaintiff interviewed for Recreation Worker on June 4, 2009 and was told at the interview that (a) he was qualified but (b) the position, though presently posted, was not available. The interviewers asked Plaintiff if he would take the position of Juvenile Counselor and Plaintiff said he would. They said they would get back to him but did not. He was later informed by letter that despite his superior qualifications, they were going with someone else.

41. On June 20, 2007, Plaintiff became aware of two (2) open postings at the Juvenile Detention Center for which he was qualified: Recreational Supervisor (posting #070108) and Supervisor of Juvenile Detention Counselors/Group Service Supervisor (posting #070107). On June 21, 2007, Plaintiff applied for both.

42. Plaintiff called Mr. Gilmore's office to inquire about the application of the preferential rehire policy to his applications, and left a complete message. There was no

return call. Plaintiff called Mr. Fairman's office and was told he had to speak with Mr. Gilmore.

43. On June 21, 2007, Plaintiff went to Mr. Gilmore's office with his completed job applications and was told to take them to County Human Resources. On handing the paperwork to HR employee Eleanor Henry, she informed him that an official college transcript was required. Plaintiff told her he had one on file due to his being a recent employee and handed her an official sealed copy that he had. Plaintiff told her that the posting did not state that the transcript had to be in a sealed envelope. She refused to accept his applications. Plaintiff further told her that the Detention Center had an official copy on file, which was verified telephonically by Vanessa McCain at the JDC. Ms. Henry sent Plaintiff to Mr. Gilmore. Ms. McCain informed Plaintiff that one of Mr. Gilmore's assistants would take Plaintiff's job applications. Gilmore's assistant, Doris Geshon, took the applications. She called Mr. Gilmore who then told her not to accept the applications. The postings expired at the end of the day on June 21 with Plaintiff's applications not accepted.

44. The refusal to accept Plaintiff's applications on June 21, 2007 was a political charade orchestrated to keep him from having a application on file and in retaliation for his having filed a *Shakman* claim.

45. The following week, Plaintiff saw a new posting for "Business Manager" (posting #070125). The posting now explicitedly stated "sealed envelope" for transcripts.

46. The County permits applicantion for posted positions to be made on-line via the Internet. In 2008 Plaintiff applied for Assistant Team Leader. He had heard about an

opening for Team Leader and applied in writing for it around the same time. The County acknowledged his interest and application for both positions in writing.

47. On June 2, 2009, plaintiff received an e-mail notice from County Recruiter Felecia Watson that he had been selected to be interviewed for the position of Recreation Worker at the JTDC. He had contacted her earlier in June about the position. Per her e-mail, plaintiff appeared at the Juvenile Temporary Detention Center for the interview. He was interviewed for the position of "Recreational Worker" by two "Team Leaders." They questioned his as to his previous employment at the Cook County Juvenile Temporary Detention Center, his experience there and asked him why he was laid off. When Plaintiff informed them that it was political retaliation, these persons told Plaintiff that the position was not available. Plaintiff asked if the position of "Assistant Team Leader" was available and was told the only position available was the position of Juvenile Counselor. Plaintiff informed them that he would accept the position. On June 22, 2009 plaintiff received a letter from Carrie Hegenderfer which stated that though she was impressed with his skills, they were "mov[ing] forward with other candidates," and though he was qualified for that position, they had selected someone else.

48. Since that time, Plaintiff has heard nothing from the County concerning his pending applications.

**COUNT I**
(*Shakman* Violation v. Cook County and Earl Dunlap)

49. Plaintiff realleges and incorporates by reference paragraphs 1 - 48 above as if fully set forth herein.

50. County postings on the Internet at CareerBuilder.com show that the

positions of Assistant Team Leader, Juvenile Detention Counselor, and Recreation Worker, were open as of June 2, 2009.

51. Plaintiff possessed all necessary qualifications for the positions for which he had applied, and had actual experience in each. Further, he had passed all tests required by the new administration of the JTDC and had both a college and master's degree.

52. Plaintiff contacted Felecia Watson, the County recruiter, by email. Watson promised Plaintiff she would investigate the interview statements, including the statement that the position was not available and the circumstances surrounding same in an email sent by her on July 20, 2009. Since that email, Plaintiff has not received any further response from Felecia Watson or anyone else in the County or JTDC to date.

53. The United States District Court for the Northern District of Illinois, in the case titled *Michael L. Shakman, et al. v. City of Chicago, et al.*, No. 69 C 2145, Judge Wayne R. Andersen, issued an order stating in pertinent part as follows:

> * * *Until he was laid-off in 2007, Mr. Coleman was one of four floor managers at the JTDC. When Mr. Coleman began the floor manager position, it was classified as a Grade 18, Administrative Assistant IV position. In 2001, the floor manager position was reclassified as a Grade 20 position.
>
> During the course of her investigation, the CA [Compliance Administrator] found evidence of tension between the floor managers and their supervisor, Supervisor B, and the JTDC Bureau Chief. The tensions stemmed from the floor managers' positive relationship with the JTDC Superintendent, who had a different political affiliation than the Bureau Chief and Supervisor B. The CA also found evidence that Supervisor B pressured Mr. Coleman to purchase fundraising tickets for form Cook County President John Stroger.
>
> Shortly after the Bureau Chief was appointed as the JTDC Superintendent, he eliminated all four floor manager positions under the guise of budget cuts. The CA determined that Mr. Coleman was

>harmed by his lack of political considerations and that the floor manager positions were eliminated, in part, because of unlawful political considerations by the new JTDC Superintendent." (Doc. 1089.)

54. Defendant Cook County violated the *Shakman* Decree and it continues to violate the Decree by intentionally using a political reason or factor to choose other candidates over Coleman despite his superior qualifications, experience, and skills.

55. Defendant Dunlap's agents inquired at the June 4, 2009 interview as to the reason for Plaintiff's layoff and immediately on hearing the response informed Plaintiff the position was not available.

56. These defendants have continued to engage in a pattern and practice of violating the *Shakman* Decree, as the more than 50 per cent of CA awards to claims made reflects.

57. None of the other persons occupying the same position Plaintiff was in at the time of his layoff who were also laid off have been rehired into an Administrative Assistant IV position, though possessing equal or greater qualifications as the persons hired. These persons include Roy Farmer, Michael Granberry, and Monica Collier.

58. As a result of these defendants' actions, Plaintiff has suffered loss of income and benefits, endured deep emotional pain and suffering, humiliation, and incurred attorneys' fees and expenses.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

    A.    Find that the defendants are in contempt of this Court, and assess an appropriate punishment therefore;

B. Enter a preliminary and a final injunction directing defendants to place Plaintiff in the position of Team Leader or other speciality assignments, all of which he has performed with ability in the past, and prohibit defendants from retaliating and continuing to retaliate against plaintiff in any way because of the exercise of his First Amendment rights;

C. Award plaintiff back pay and front pay and all back contributions to IRAs, 401 Ks, and pension plans of any nature;

D. Award plaintiff compensatory damages, costs and disbursements, and his reasonable attorney's fees;

E. All other damages available under the provisions of the *Shakman* Decree and/or as otherwise provided by law, fees and costs; and

F. Grant plaintiff such other and further relief as the Court deems just.

## COUNT II
(42 U.S.C. § 1983, First Amendment v. Cook County)
(The Court dismissed Earl Dunlap with prejudice from this count but he is included to preserve the issue.)

59. Plaintiff realleges and incorporates by reference paragraphs 1 - 58 of Count I, above, as if fully set forth herein.

60. At all times relevant hereto, Defendants Cook County and Transitional Administrator Earl Dunlap acted or have acted as employer, supervisor and final policy maker.

61. The actions of the County defendants in ignoring its responsibilities under the *Shakman* decree, recognized in part by the findings of both the Compliance Administrator and the *Shakman* court, and its actions in dealing with Plaintiff's repeated applications for open positions, describe at best a "general pattern of repeated behavior" of mismanagement and at worst, a widespread practice that is so permanent and well-settled that it constitutes a custom or usage.

62. Such actions include but are not limited to the following:

    a) refusing to accept Plaintiff's job applications;

    b) not interviewing him for posted open positions for which he possessed qualifications equal to or superior to those hired, coupled with actual experience in each such position;

    c) ignoring his open applications;

    d) refusing to grant him preferential rehire.

63. As the CA determined after investigation, more than 50 per cent of the *Shakman* claims presented were found meritorious and compensation awarded.

64. By defendants' actions, plaintiff suffered compensable injury and harm as a result of the denial of rights guaranteed to him pursuant to the First Amendment to the United States Constitution.

65. Defendants intentionally subjected plaintiff to unequal and retaliatory treatment by denying him promotions, denying him preferential or normal rehire, in violation of the First Amendment and treating him in an overall disparate manner.

66. Defendants have acted under color of state law at all material times hereto.

67. The conduct of defendants violated plaintiff's rights to free speech and free association guaranteed by the First Amendment to the Constitution.

68. The actions of the defendants were intentional, illful, and malicious and/or in reckless disregard of plaintiff's rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

69. The aforementioned conduct of defendants has resulted in damages to plaintiff, including but not limited to loss of pay, loss of benefits, emotional anguish, loss

of job advancement, pain and suffering, humiliation, and embarrassment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant him the following relief:

- A. All wages and benefits plaintiff would have received but for the First Amendment violations, including but not limited to back pay, front pay, pre-judgment interest, and reinstatement into his position;

- B. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by defendants' conduct;

- C. A permanent injunction enjoining defendants from engaging in the practices complained of herein;

- D. A permanent injunction requiring that defendants adopt employment practices and policies in accord with and in conformity to the requirements of 42 U.S.C. § 1983;

- E. A declaratory judgment that defendants' actions violate 42 U.S.C. § 1983;

- F. The Court retain jurisdiction of this case until such time as it is assured that defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

- G. Punitive damages as allowed by law against all individual defendants;

- H. An award of reasonable attorney's fees, costs, and litigation expenses; and

- I. Such other relief as the Court may deem just or equitable.

Respectfully submitted,

RICKEY COLEMAN

By: /s/ John Thomas Moran, Jr.
One of Plaintiff's attorneys.

John Thomas Moran, Jr. (#1954822)
The Moran Law Group
309 West Washington Blvd.
Suite 900
Chicago, Illinois 60606
Tel: (312) 630-0200
Fax: (312) 630-0203
j.t.moran@moranlawgroup.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on July 20, 2011 he served a copy of the foregoing THIRD AMENDED COMPLAINT upon the below-named persons by means of electronic filing in accordance with Fed. R. Civ. P. 5, Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) XI ( C), thereby causing a copy of the foregoing to be served upon all counsel of record, and specifically:

kent.ray@cookcountyil.gov
pfallon@cookcountygov.com

BY: /s/ John Thomas Moran, Jr.
Attorney for Plaintiff.