# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RICKEY COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 2388 |
| | ) | |
| v. | ) | Judge James F. Holderman |
| | ) | |
| COUNTY OF COOK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF APPEAL

NOTICE is hereby given that EARL DUNLAP, the Transitional Administrator of the Juvenile Temporary Detention Center, a defendant in the above named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from an order by Chief Judge James F. Holderman denying EARL DUNLAP absolute immunity, and which was entered in this action on the 22nd day of June, 2011.

Respectfully Submitted,
ANITA ALVAREZ
Cook County State's Attorney

By: /s/ Kent S. Ray
   Kent S. Ray, # 6188633
   Assistant State's Attorney
   69 West Washington,
   Suite 2030
   Chicago, IL 60602
   (312) 603-1427

## SEVENTH CIRCUIT COURT OF APPEALS INFORMATION SHEET

Include the names of all plaintiffs (petitioners) and defendants (respondents) who are parties to the appeal. Use a separate sheet if needed.

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION DOCKET NUMBER:   10cv2388

| PLAINTIFF (Petitioner) | v. | DEFENDANT (Respondent) |
|---|---|---|
| Rickey Coleman/Appellee | | Earl Dunlap/Appellant |

(Use separate sheet for additional counsel)

| PETITIONER'S COUNSEL | | RESPONDENT'S COUNSEL | |
|---|---|---|---|
| Name | John Thomas Moran | Name | Kent Ray |
| Firm | The Moran Law Group | Firm | Cook County State's Attorney Office Conflicts Counsel Unit |
| Address | 309 West Washington Blvd. Suite 900 Chicago, IL 60606 | Address | 69 West Washington Suite 2030 Chicago, IL 60620 |
| Phone | 312-630-0200 | Phone | 312-603-1427 |

| Other Information | | | |
|---|---|---|---|
| District Judge | Holderman | Date Filed in District Court | 4/18/2010 |
| Court Reporter | C. Conway      5594 | Date of Judgment | 6/22/2011 |
| Nature of Suit Code | 442 | Date of Notice of Appeal | 7/20/2011 |

COUNSEL:          Appointed [ ]          Retained [X]          Pro Se [ ]

FEE STATUS:          Paid [ ]          Due [X]          IFP [ ]

                    IFP Pending [ ]          U.S. [ ]          Waived [ ]

Has Docketing Statement been filed with the District Court Clerk's Office?          Yes [ ]          No [X]

If State/Federal Habeas Corpus (28 USC 2254/28 USC 2255), was Certificate of Appealability:

          Granted [ ]          Denied [ ]          Pending [ ]

If Certificate of Appealability was granted or denied, date of order: _____

If defendant is in federal custody, please provide U.S. Marshall number (USM#): _____

**IMPORTANT: THIS FORM IS TO ACCOMPANY THE SHORT RECORD SENT TO THE CLERK OF THE U.S. COURT OF APPEALS PURSUANT TO CIRCUIT RULE 3(A).   Rev 04/01**

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 2388 | **DATE** | 6/22/2011 |
| **CASE TITLE** | | Rickey Coleman vs. County of Cook, et al. | |

**DOCKET ENTRY TEXT**

ENTER MEMORANDUM OPINION AND ORDER: The "County Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint" [22] and the "Motion of Defendants Earl Dunlap and The Chief Judge of the Circuit Court of Cook County, Illinois to Dismiss Plaintiff's Second Amended Complaint" [24] are both granted in part and denied in part. Plaintiff Rickey Coleman's *Shakman* claim (Count I) is dismissed with prejudice in part pursuant to the doctrine of res judicata, to the extent Count I is based on Coleman's March 16, 2007 termination. To the extent Count I is based on Coleman's failure to rehire allegations, Count I remains pending against defendants Cook County and Earl Dunlap. Coleman's § 1983 claim (Count II) is dismissed with prejudice as alleged against defendants J. W. Fairman and Earl Dunlap, in their individual capacities, and is dismissed without prejudice as alleged against Cook County. Coleman is granted leave to file a Third Amended Complaint consistent with this order on or before 7/8/2011, amending his *Monell* claim against Cook County, should he desire to do so. Defendants' answers are due 7/22/2011. Status hearing set for 8/11/2011 at 9:00 a.m. for purposes of scheduling further dates in this case.

Notices mailed.

| | Courtroom Deputy Initials: | A.M.M. |
|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICKEY COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 CV 2388 |
| | ) | |
| COUNTY OF COOK, a unit of local | ) | |
| government; J.W. FAIRMAN, an | ) | |
| individual; KIM DAVID GILMORE, an | ) | |
| individual; and EARL DUNLAP, the | ) | |
| Transitional Administrator of the Juvenile | ) | |
| Temporary Detention Center, | ) | ) |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In his two-count Second Amended Complaint (Dkt. No. 15 ("2d Am. Compl.")), plaintiff

Rickey Coleman ("Coleman") alleges that defendants Cook County, J.W. Fairman ("Fairman"),

Kim David Gilmore ("Gilmore"),[1] the Chief Judge of the Circuit Court of Cook County, Illinois,[2]

and Earl Dunlap ("Dunlap") unlawfully terminated Coleman's employment as an Administrative

Assistant IV/Floor Manager at the Cook County Juvenile Temporary Detention Center ("JTDC")

---

[1] It appears from the record that Gilmore has not been served in this case. (*See* Dkt. No. 14 (ordering Coleman's counsel to file return of service with the Clerk of Court); *see also* Dkt. No. 40 ("County's Reply") at 9, n.3.).) Accordingly, Gilmore has not filed an answer or other responsive pleading at this time. Cook County and Fairman together are referred to in this court order as the "County Defendants."

[2] This court on December 9, 2010, dismissed the Chief Judge of the Circuit Court of Cook County, Illinois as a defendant in this lawsuit by stipulation of the parties. (Dkt. No. 51.)

1

and failed to offer Coleman preferential rehire options because of Coleman's political affiliation, in violation of Coleman's First Amendment rights as protected by 42 U.S.C. § 1983 and the "*Shakman* Decree." *See Shakman v. Democratic Org. of Cook County*, No. 69 C 2145 (N.D. Ill.).

Pending before the court are the "County Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint" (Dkt. No. 22) and the "Motion of Defendants Earl Dunlap and The Chief Judge of the Circuit Court of Cook County, Illinois to Dismiss Plaintiff's Second Amended Complaint" (Dkt. No. 24). For the reasons set forth below, the motions are both granted in part and denied in part. Coleman's *Shakman* claim (Count I) is dismissed with prejudice in part pursuant to the doctrine of res judicata, to the extent Count I is based on Coleman's March 16, 2007 termination. To the extent Count I is based on Coleman's failure to rehire allegations, Count I remains pending against Cook County and Dunlap. Coleman's § 1983 claim (Count II) is dismissed with prejudice as alleged against defendants Fairman and Dunlap, in their individual capacities, and is dismissed without prejudice as alleged against Cook County. Coleman is granted leave to file a Third Amended Complaint consistent with this order on or before July 8, 2011, amending his *Monell* claim against Cook County, should he desire to do so.

<u>BACKGROUND</u>

For purposes of the pending motions to dismiss, the court accepts the factual allegations in Coleman's Second Amended Complaint as true and draws all reasonable inferences in favor of Coleman. *Ray v. City of Chi.*, 629 F.3d 660, 662 (7th Cir. 2011). The facts set forth below are therefore stated from this perspective.

2

Coleman is a former employee of the JTDC, where he served in various positions beginning in 1988. (2d Am. Compl.[3] ¶¶ 5, 11-14.) Most recently, before his termination on March 16, 2007, Coleman served as an Administrative Assistant IV/Floor Manager. (*Id.* ¶ 5.) Defendants Gilmore and Fairman together were the final decision-makers with respect to Coleman's March 16, 2007 termination. (*Id.* ¶ 6.) Dunlap has served as the Transitional Administrator of the JTDC since his appointment in August 2007 by Judge John A. Nordberg in the case of *Doe v. Cook County*, No. 99 C 3945 (N.D. Ill.). (*Id.*; *see also* No. 99 C 3945 (Dkt. No. 330).)

At the time of Coleman's termination, Gilmore informed Coleman that he was being laid-off due to a reduction in budget. (*Id.* ¶ 5; Count I, ¶ 21.) Shortly after his termination, however, Coleman discovered that his position had been renamed to "Team Leader" and had been filled by "political employees" who performed the same duties as those performed by Coleman at the time of his layoff. (Count I, ¶ 23.) Contrary to Gilmore's representations, the budget actually increased. (Count I, ¶ 24.)

Gilmore also told Coleman that he was eligible for preferential rehire. (Count I, ¶ 21.) Since his layoff, Coleman has applied for positions as a Recreational Supervisor, a Group Service Supervisor, a Recreational Worker,[4] a Juvenile Counselor, and an Assistant Team Leader at the JTDC. (Count I, ¶ 27.) The position of "Team Leader" was never posted. (Count I, ¶ 23.)

---

[3] The court notes that, although the Second Amended Complaint refers to Exhibits A and B (*see* 2d Am. Compl. ¶¶ 5, 14), no exhibits to the Second Amended Complaint have actually been filed with the court.

[4] Coleman appears to refer to the same position as both "Recreational Worker" and "Recreation Worker." (Count I, ¶¶ 27-29.) The court assumes this is a typo, but nevertheless repeats Coleman's allegations as set forth in his Second Amended Complaint.

3

On June 2, 2009, Coleman received an email stating that he had been selected to be interviewed for the position of Recreation Worker. (Count I, ¶ 28.) During his interview, however, Coleman was told that the position of Recreational Worker was not available. (*Id.*) When Coleman asked whether the position of Assistant Team Leader was available, he was told that the only position available was the position of Juvenile Counselor. (*Id.*) According to County postings on the Internet at CareerBuilder.com, the positions of Assistant Team Leader, Juvenile Detention Counselor, and Recreation Worker were open as of June 2, 2009. (Count I, ¶ 29.) Coleman told his interviewers that he would accept a position as a Juvenile Counselor. (*Id.*) On June 22, 2009, Coleman received a letter informing him that he had not been selected for the position of Juvenile Counselor, despite his skills and qualifications for that position. (Count I, ¶ 28.) Coleman's request to County Recruiter Felecia Watson for an investigation into the circumstances surrounding his June 2009 interview went unanswered. (Count I, ¶ 30.)

Coleman's layoff was approved by Fairman, who was a political appointee of the late John Stroger. (Count I, ¶ 22.) Before his layoff, Coleman had been repeatedly told by his immediate supervisor, Willie Ross, that "you think you are protected but you are not. You better learn to play the game and support John Stroger." (Count I, ¶ 25.) Coleman took this to mean he should donate to Stroger's campaign and the campaigns of his friends. (*Id.*)

Coleman alleges that Cook County has "intentionally us[ed] a political reason or factor to choose other candidates over Coleman despite his superior qualifications, experience, and skills," and that Cook County and Dunlap "have continued to engage in a pattern or practice of violating the *Shakman* Decree." (Count I, ¶¶ 32-33.) Coleman also alleges that Cook County, Fairman, and Dunlap acted under color of state law to violate Coleman's First Amendment

4

rights of free speech and free association by "denying him promotions [and] denying him

preferential or normal rehire." (Count II, ¶¶ 20-22.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally must include only "a

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

P. 8(a)(2). To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure

12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1940 (2009) (quoting

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

If the allegations of a complaint "fail[ ] to state a claim upon which relief can be

granted," the complaint will be dismissed. Fed. R. Civ. P. 12(b)(6). In making its determination

in this case, the court construes Coleman's Second Amended Complaint in the light most

favorable to Coleman, accepts as true all well-pleaded factual allegations set forth therein, and

draws all reasonable inferences in Coleman's favor. *Ray*, 629 F.3d at 662.

## ANALYSIS

I.    Court's Grant of Immunity to Dunlap in *Doe v. Cook County*

As a matter of procedure, district courts are permitted "to take judicial notice of matters

of public record without converting a motion for failure to state a claim into a motion for

summary judgment." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080

(7th Cir. 1997). This court takes judicial notice of the fact that Dunlap was appointed by District

Judge John A. Nordberg to serve as the Transitional Administrator of the JTDC on August 14,

2007, as well as other orders entered in the case of *Doe v. Cook County*. (*See* 99 C 3945, Dkt.

No. 330 ("Appointment Order") ¶ 4.)  The Appointment Order begins with the following

statement of purpose,

> The purpose of this Order is to appoint a Transitional Administrator (TA) with the authority and responsibility to bring the [JTDC] into substantial compliance with the Memorandum of Agreement (MOA), the Agreed Supplemental Order (ASO), and the Modified Implementation Plan (MIP) [all previously entered in the case of *Doe v. Cook County*] and, if consistent with Illinois law, to prepare the JTDC for the transition of administrative authority over its operations to the Office of the Chief Judge of the Circuit Court of Cook County.

(*Id.* ¶ 1.)  The Appointment Order continues, "The TA shall be an agent of this Court and is

specifically appointed with the authority and responsibility to put in place at the JTDC qualified

management to implement the requirements of the MOA, the ASO, and the MIP."  (*Id.* ¶ 2.)

Pursuant to this mandate, Dunlap was given extensive administrative responsibility over the

JTDC, including the responsibility "[t]o oversee, supervise, and direct all management,

administrative, financial, contractual, personnel, security, housing, custodial, purchasing,

maintenance, technology, health services, mental health services, food and laundry service,

recreational, educational, and programmatic functions relating to the operations of the JTDC

consistent with the authority vested in the position of the Superintendent of the JTDC and to

restructure the JTDC into an institution that substantially complies with the MOA, the ASO, and

the MIP."  (*Id.* ¶ 5.b.)  Relevant to the pending lawsuit, Dunlap was also explicitly granted "[t]he

power to establish personnel policies; to create, abolish, or transfer positions; and to hire,

terminate, promote, transfer, and evaluate management and staff of the JTDC."  (*Id.* ¶ 6.c.)

The original Appointment Order granted Dunlap "absolute immunity from liability."  (*Id.*

¶ 7.h.)  In 2010, in response to a request by Dunlap in *Doe v. Cook County*, this provision was

later amended with retroactive effect to read,

6

> Effective August 14, 2007, the TA and his staff shall have the status of officers and
> agents of this Court and as such shall be vested with the same immunities as vest
> with this Court. Also effective August 14, 2007, the County shall indemnify the TA
> and members of his staff to the same extent that Cook County and/or the Office of
> the Chief Judge of the Circuit Court of Cook County is obligated to indemnify the
> Superintendent of the JTDC.

(No. 99 C 3945, Dkt. No. 587 ("June 22, 2010 Order"); *see also* Dkt. No. 638 ("June 22, 2010

Hr'g Tr.") 3:19-4:7 (*Doe* plaintiffs and Cook County agree to Dunlap's proposed amendment).)

Based on his grant of immunity, Dunlap contends that Coleman's claims must be

dismissed for failure to state a claim for which relief can be granted.  While Dunlap

acknowledges that he "performs no judicial functions" (Dkt. No. 42 ("Dunlap's Reply") at 3), he

nevertheless contends that he has been granted "absolute immunity for all of his actions that are

within his jurisdiction and capacity as Transitional Administrator."  (Dkt. No. 25 ("Dunlap's

Mem.") at 6.)  In making this argument, Dunlap does not directly address the specific language

defining his grant of immunity as "the same . . . as vest[s] with this Court."  (June 22, 2010

Order.)  Rather, Dunlap asserts that he "has been granted immunity *analogous* to that held by a

federal judge," and that his immunity "arises out of his conduct as the JTDC Transitional

Administrator, just as a judge's immunity arises out of the performance of his or her judicial

function."  (Dunlap's Reply 4-5 (emphasis added).)

Dunlap's interpretation of the amended immunity language goes too far.  Dunlap was not

granted immunity analogous to the absolute immunity enjoyed by judges; rather, he was granted

"the *same* immunities as vest with this Court."  (June 22, 2010 Order (emphasis added).)  The

immunity that vests with the court is limited in scope.  As the Seventh Circuit recently reiterated,

"[a]bsolute immunity . . . applies only to judicial acts and does not protect the official from acts

that are ministerial or administrative in nature."  *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir.

7

2011) (citing *Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005)).[5] Because Dunlap's grant of immunity is co-extensive with the court's judicial immunity, Dunlap cannot have been granted immunity for his administrative actions.

The court appreciates Dunlap's argument that he "has no need for immunity for any judicial acts," and therefore it "would make no sense" to limit Dunlap's immunity in the manner set forth above. (Dunlap's Reply 3.) The court rejects this argument, however, as being inconsistent with the immunity language requested by Dunlap and ordered by the court in *Doe v. Cook County*. (*See* No. 99 C 3945, Dkt. No. 579 ("The TA proposes replacing the language in Paragraph 7(h) with the following: [. . . ] "the TA and his staff . . . shall be vested with the same immunities as vest with this Court.").) Even if the court were to find that the language of the amended immunity clause supports Dunlap's interpretation, which it does not, the court also is not persuaded that it has the authority to confer upon its agent a more expansive grant of immunity than the court itself enjoys. *See Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985)

---

[5] This line of cases dates back to *Forrester v. White*, 484 U.S. 219, 229-30 (1988), in which the Supreme Court held that a state court judge was not entitled to absolute judicial immunity for actions taken "in an administrative capacity," when the judge demoted and discharged a probation officer of the court. This court rejects Dunlap's claim that "*Forrester* . . . has been legislatively reversed by the enactment of the Federal Courts Improvement Act of 1996." (Dunlap's Reply 3 (citing *Leclerc v. Webb*, 270 F. Supp. 2d 779, 792-93 (E.D. La. 2003).) Dunlap's assertion on this point is simply incorrect. The court in *Leclerc* specifically acknowledged "the FCIA does *not* purport to eliminate the clear distinctions among the various capacities in which judicial officers act," *Leclerc*, 270 F. Supp. 2d at 793 (emphasis added), and concluded "had Congress intended to erase the long accepted capacity distinctions recognized by the High Court it would have used appropriate language." *Id.* Dunlap cites no additional authority in support of his assertion that *Forrester* is no longer good law. To the contrary, Seventh Circuit precedent makes clear that courts continue to rely on *Forrester*'s distinction between judicial acts and administrative acts in analyzing immunity defenses. *See, e.g.*, *Dawson*, 419 F.3d at 661 ("The Supreme Court has acknowledged the imprecision inherent in 'attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges.'") (citing *Forrester*, 484 U.S. at 227).

(noting the common law roots of judicial immunity); *see also Tower v. Glover*, 467 U.S. 914, 922-23 (1984) ("We do not have a license to establish immunities from § 1983 actions in the interests of what we judge to be sound public policy.").

Dunlap argues for the first time in his sur-reply brief that court-appointed receivers in general are granted the same "broad immunity granted to judges," as long as they are acting within the scope of their receivership.  (Dkt. No. 47 ("Dunlap's Sur-Reply") at 3 (quoting *Fed. Trade Comm'n v. 3R Bancorp*, No. 04 C 7177, 2006 WL 2191317, at *1 (N.D. Ill. July 28, 2006)).)  Dunlap's reliance on *Federal Trade Commission* is misplaced, however, because the district court in that case rejected "the Receiver's request for a broad release from liability." *Fed. Trade Comm'n*, 2006 WL 2191317, at *2.  For the reasons set forth below, this court also respectfully disagrees with the district court's conclusion in *Bowie v. Sims*, No. 2:05-cv-1050-RDP, 2005 U.S. Dist. LEXIS 45789, at *12 (N.D. Ala. Dec. 7, 2005), that the defendant receiver was entitled to absolute judicial immunity because he "was acting within the scope of his authority as Receiver of the Board when he allegedly discriminated and retaliated against Plaintiff with regard to employment decisions."  *Bowie*, 2005 U.S. Dist. LEXIS 45789, at *12.

The Seventh Circuit does recognize a type of "quasi-judicial" immunity that functions to protect defendants from liability for their actions in executing court orders.  *See Snyder v. Nolen*, 380 F.3d 279, 286-87 (7th Cir. 2004) (explaining the two types of quasi-judicial immunity, only one of which applies to Dunlap's actions[6]).  Under Seventh Circuit case law, however, acting "within the scope" of a judicial order is not enough; rather, the Seventh Circuit has explained

---

[6] The other type of quasi-judicial immunity involves the "actions of non-judicial officers acting in a judicial capacity."  *Snyder*, 380 F.3d at 286.  Dunlap has conceded in this case that he "performs no judicial functions."  (Dunlap's Reply 3.)

that this type of quasi-judicial immunity is only appropriate when the defendant's actions have

been explicitly ordered by a judicial officer. *See, e.g., Kincaid v. Vail*, 969 F.2d 594, 601 (7th

Cir. 1992) ("[W]hen functions that are more administrative in character have been undertaken

pursuant to the explicit direction of a judicial officer, we have held that that officer's immunity is

also available to the subordinate."); *see also Schneider v. County of Will*, 366 Fed. App'x 683,

685 (7th Cir. 2010) ("Although the contours of quasi-judicial immunity remain unsettled, courts

regularly require nonjudicial actors invoking the doctrine to demonstrate that their acts were

directly and explicitly ordered by a judge.").  "The policy justifying an extension of absolute

immunity in these circumstances is to prevent court personnel and other officials from becoming

a lightening rod for harassing litigation aimed at the court." *Snyder*, 380 F.3d at 287 (quoting

*Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001)).  Although would-be plaintiffs are

barred from directly suing the officials responsible for executing the court order in question,

litigants can nevertheless contest the legality of the underlying court order through the usual

appellate process. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986) (citing

*Ashbrook v. Hoffman*, 617 F.2d 474, 477 (7th Cir. 1980)); *cf. Forrester*, 484 U.S. at 227 ("[m]ost

judicial mistakes or wrongs are open to correction through ordinary mechanisms of review,

which are largely free of the harmful side-effects inevitably associated with exposing judges to

personal liability").  Thus, the Seventh Circuit has found that absolute quasi-judicial immunity

was appropriately granted to protect a clerk of court whose actions were undertaken "at judicial

direction," *Kincaid*, 969 F.2d at 601; to protect court personnel who required payment for a trial

court transcript "pursuant to the judge's instructions," *Dellenbach v. Letsinger*, 889 F.2d 755,

763 (7th Cir. 1989); and to protect a local Sheriff and Chief of Police who seized and sold the

plaintiffs' property "pursuant to an official court order to enforce a validly entered judgment," *Henry*, 808 F.2d at 1238-40 (7th Cir. 1986). *See also Lawrence v. Conlon*, No. 92 C 2922, 1995 WL 153273, at *4 (N.D. Ill. Apr. 6, 1995) (warden who "incarcerated Plaintiff pursuant to a court order . . . is entitled to quasi-judicial absolute immunity").

On the other hand, "when the conduct directly challenged is not the judge's decision making, but the manner in which that decision is enforced, . . . the enforcement officer's fidelity to the specific orders of the judge marks the boundary for labeling the act 'quasi-judicial.'" *Richman*, 270 F.3d at 436. In other words, the Seventh Circuit "has distinguished between the court's order and the *manner* in which the order is enforced." *Snyder,* 380 F.3d at 287 (emphasis added). When a plaintiff's claimed damages arise from the allegedly unlawful execution of a concededly lawful court order, the Seventh Circuit has held that absolute quasi-judicial immunity is not available to defendants. *Richman*, 270 F.3d at 438 (no absolute immunity for courtroom deputies who allegedly used unreasonable force in executing judicial restraining order). The court in *Richman* noted that, under these circumstances, a claim for damages "is not . . . a collateral attack on the judge's order . . ., and an appeal of the judge's order would provide no remedy." *Id.* at 437-38.

Dunlap has not argued that the court ordered him to take any specific actions with respect to Coleman's employment with the JTDC, nor is any such command apparent on the face of the Appointment Order. Without this type of explicit court order, the court is hesitant to expand the traditional scope of quasi-judicial immunity to apply to Dunlap's conduct in this case. Of special consideration is that fact that, like the plaintiff in *Richman*, Coleman does not take issue with the underlying Appointment Order, and an appeal of that order would do little to redress Coleman's

alleged injuries in this case.

Ultimately, "[w]hether particular officeholders have quasi-judicial absolute immunity for their acts depends on an analysis of the nature of the activities in which the officeholder engages and the relationship of those activities to the judicial process." *Ashbrook*, 617 F.2d at 476; *see also Forrester*, 484 U.S. at 224 ("Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy."). Although Dunlap asserts that "[t]he same policies which underlie the grant of absolute judicial immunity to judges justify the grant of immunity to those conducting activities intimately related to the judicial process," (Dunlap's Sur-Reply 3 (quoting *Ashbrook*, 617 F.2d at 476)), Dunlap has not articulated what these policies are or how they apply to his unique position at the JTDC.

In *Ashbrook*, the Seventh Circuit addressed the question of whether two court-appointed partition commissioners were immune from lawsuit for their actions in conducting a sale of real property. In assessing the nature of the commissioners' activities, the court noted that the partition proceeding was "in the nature of a judicial proceeding," the commissioners' duties were defined by statute, the commissioners' conduct was reviewed by a judge, and the report of partition was "read in open court, and if confirmed by the court is entered in the record book." *Id.* The court in *Ashbrook* also stressed the fact that "[t]he presence of appeal [exists] to correct the commissioners' errors," and ultimately held that the defendant commissioners were entitled to absolute quasi-judicial immunity. *Id.* at 477; *see also T & W Inv. Co. v. Kurtz*, 588 F.2d 801, 802 (10th Cir. 1978) (finding quasi-judicial immunity appropriate for court-appointed receiver when "every action by [the receiver] objected to in this suit was known to and approved by the

12

state court judge supervising the receiver," the plaintiff "had an opportunity to and did object throughout the state court proceedings," and "the receiver was in fact following the orders of the court and complying therewith"); *Kermit Construction Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1, (1st Cir. 1976) ("a receiver who faithfully and carefully carries out the orders of his appointing judge must share the judge's absolute immunity"); *Bradford Audio Corp. v. Pious*, 392 F.2d 67, 72-73 (2d Cir. 1968) ("[w]e hold that the appellee, as a court-appointed receiver doing no more and no less than to carry out an explicit order, fair and regular on its face, by the appointing court . . . was immune from liability").

The types of procedural safeguards present in *Ashbrook* and other receivership cases are lacking in this case. Dunlap's personnel decisions with respect to individual JTDC employees are not open to the adversarial process, reviewed by the court, or made part of the official court record. Morever, and perhaps most important, they are not subject to appeal. The court therefore finds *Ashbrook* and related cases to be distinguishable.

Administering the JTDC so as to ensure substantial compliance with previously-entered court orders is unquestionably a difficult and demanding task. *See Cleavinger*, 474 U.S. at 203 (recognizing that "administration of a prison is a difficult undertaking at best"). The court is mindful of the burden that Dunlap has shouldered at the request of the court and the parties in *Doe v. Cook County*, and does not wish to increase that burden by inviting potentially harassing litigation aimed at Dunlap's efforts. The court is not persuaded, however, that Dunlap is eligible for absolute quasi-judicial immunity for his personnel decisions. In *Forrester*, the Supreme Court concluded that "the threat of vexatious lawsuits by disgruntled ex-employees" was not a "great enough" danger to the judicial process to require absolute immunity for judges.

13

*Forrester*, 484 U.S. at 229. Dunlap has not explained why the treat of such lawsuits against a court-appointed administrator requires greater protections for a court-appointed officer than the court itself enjoys. The fact that certain actions "may be essential to the very functioning of the courts" does not, without more, establish a right to invoke the sweeping protections of absolute immunity. *Id.* at 228.

For all of the reasons set forth above, the court finds that Dunlap is not entitled to absolute immunity in this case.

II.     <u>*Shakman* Claim (Count I)</u>

In Count I of his Second Amended Complaint, Coleman alleges that Cook County and Dunlap violated the Consent Decrees entered in *Shakman v. Democratic Org. of Cook County*, No. 69 C 2145 (N.D. Ill.). As further explained in the February 2, 2007 "Supplemental Relief Order for Cook County" entered in *Shakman*:

> In 1972, Defendant Cook County ("County") entered into a Consent Decree ("1972 Consent Decree") which, among other things, prohibited the County from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." On January 7, 1994, the County entered into a Consent Decree which incorporated the 1972 Consent Decree's prohibitions and extended those prohibitions to include the County's hiring practices, with certain exclusions. The 1972 and 1994 Consent Decrees are collectively referred to as the "Consent Decrees."

*Shakman*, No. 69 C 2145 (N.D. Ill.) (Dkt. No. 587 ("SRO") at 1).

The SRO, which was consented to by the *Shakman* plaintiffs and by Cook County,

provides "the exclusive remedy for Class Members[7] seeking remedies for claims under the

Consent Decrees based on events occurring prior to the entry of the SRO who fail to opt out."

(SRO ¶ 4.)  The SRO then goes on to set forth specific claims procedures "for alleged pre-SRO

violations" (Section IV) and procedures "for violations occurring after the entry of the SRO"

(Section V).

A.     Coleman's Previously Adjudicated *Shakman* Claim

On May 21, 2007, Coleman filed a claim seeking monetary relief under the pre-SRO

procedures, alleging "that because of unlawful political considerations, he was discriminated

against, denied overtime pay, and eventually laid off from his position at the [JTDC]."  (69 C

2145, Dkt. No. 1089 ("4/28/2009 Order") at 1.)  Coleman claimed that these violations took

place on October 24, 2007, January 11, 2007, March 13, 2007, and April 13, 2007.  (69 C 2145,

Dkt. No. 944, Ex. A ("Claim Form").)[8]

The Compliance Administrator ("CA") determined that Coleman was entitled to an

award of $15,500 in damages, and Coleman objected to this determination before the presiding

judge in the *Shakman* case, Judge Wayne R. Andersen.  (69 C 2145, Dkt. No. 944 ("Coleman's

Obj.").)  Coleman's objection emphasized his futile attempts in June 2007 to re-apply for

employment with the County, and his subsequent "blacklisting" by the County.  (*Id.*)  The CA's

---

[7] "Class Members" are defined as "past, present, and future (i) candidates, (ii) voters, (iii) applicants for employment with the County, and (iv) employees of the County."  (SRO 1.)

[8] The fact that Coleman's May 21, 2007 claim was based on incidents occurring both pre- and post-SRO has complicated the parties' use of certain terminology in this case.  Because Coleman's claims in *this case* are all based on events occurring during or after March 2007, the court declines to adopt the County Defendants' use of the term "pre-SRO claims" to refer to any of the claims pending in the lawsuit before this court.

brief in response to Coleman's objection explains, in relevant part,

> 4.  Claimant Rickey Coleman filed a claim alleging that the Floor Manager positions at JTDC were eliminated in the 2007 budget based on political tensions to make way for political hires. Claimant further alleges that he has been prevented from becoming re-employed with Cook County despite his request to be placed on reinstatement lists.

> 5.  After consideration of the relevant factors, the CA determined Claimant Rickey Coleman was eligible for recovery in the amount of $15,500.00. Where appropriate, damages were calculated from August 2004 through August 2008.

> 7.  [ . . . ] Finally, Claimant complains that he was denied overtime. The CA requested, but did not receive overtime documents. The floor managers were required to be on call 24 hours a day, seven days a week for one out of every seven weeks. The floor managers had been previously compensated for these duties through overtime.

> 8.  After consideration of the relevant factors, the CA determined that Claimant Rickey Coleman was eligible for recovery in the amount of $15,500.00. Specifically, the CA determined that Claimant was harmed by [his] lack of political affiliations. The CA found evidence of political tension between the floor managers, the superintendent, Supervisor B and the Bureau Chief based on the differing political affiliations of the superintendent, Supervisor B and the Bureau Chief. The CA determined, however, that Claimant's floor manager position was not equivalent to the AA IV positions that were retained in the budget cuts. In addition, the CA determined that Claimant was denied overtime compensation, at least in part, based on political considerations.

(69 C 2145, Dkt. No. 1377-5 ("CA's Brief").) In discussing the relevant evidence reviewed in the course of her investigation, the CA did not mention Coleman's claims regarding re-employment or reinstatement with the County. (*Id.* ¶¶ 6-7.) The CA did, however, note that "the SRO otherwise provides for post-SRO relief for those alleged violations occurring after February 2, 2007." (*Id.* ¶ 2.)

Judge Andersen granted Coleman's objections in part, increasing Coleman's award from $15,500 to $25,000 on the grounds that "$25,000 better compensates Mr. Coleman for his

damages." (4/28/2009 Order 2.) Judge Andersen reiterated the CA's finding "that Mr. Coleman

was harmed by his lack of political considerations and that the floor manager positions were

eliminated, in part, because of unlawful political considerations by the new JTDC

Superintendent" and noted that "[t]he CA correctly drew a negative inference from the JTDC's

failure to produce the overtime documents." (*Id.*) Although Judge Andersen did not explicitly

comment on Coleman's "blacklisting" claim, Judge Andersen stressed,

> The SRO does not provide the CA with authority to award claimants non-
> monetary relief, or monetary relief for alleged violations that occurred after
> February 2, 2007. If Mr. Coleman wishes to pursue compensation for a claim
> related to events that occurred after February 2, 2007, he must file a claim with
> the Complaint Administrator, Mark Vogel.

(*Id.* at 2-3.) Judge Andersen reiterated this sentiment again on November 4, 2009, and on July

8, 2010. (69 C 2145, Dkt. Nos. 1400 and 1713 ("To pursue a claim related to events that

occurred after February 2, 2007, Mr. Coleman must file a claim with the Complaint

Administrator, Mark Vogel.").)

In their motion to dismiss, the County Defendants argue that res judicata precludes

Coleman's re-litigation of his claim "that Cook County . . . violated the *Shakman* Decree through

the 2007 lay-off and failure to rehire him." (Dkt. No. 22 ("County's Mot.") at 8.) Similarly,

Dunlap argues that Coleman has already "obtained his 'exclusive relief'" through Judge

Andersen's final order. (Dunlap's Mot. 14.) Coleman concedes that his "termination claim" has

already been adjudicated on the merits, but distinguishes this claim from his failure to rehire

claim. (Dkt. No. 36 ("Coleman's Resp.") at 11-12.) Noting that his failure to rehire claim is

"based on the June 22, 2009 denial," Coleman emphasizes that "[t]here has been no hearing on

the merits" of that claim. (*Id.* at 12.)

17

Neither the CA's Brief nor Judge Andersen's April 28, 2009 Order addresses the inconsistent fact that Coleman was awarded damages for his March 2007 termination under the pre-SRO procedures, which are supposed to have a cut-off date of February 2, 2007. Nevertheless, it is clear from the evidence in the public docket that Coleman's termination claim has in fact been adjudicated on the merits, as Coleman concedes. The court therefore finds that Coleman is barred from re-litigating his termination claim under the doctrine of res judicata.

On the other hand, it also appears clear to this court that Coleman's failure to rehire claim has not been previously adjudicated on the merits. No mention of the failure to rehire claim was included anywhere in Judge Andersen's April 28, 2009 Order, nor did the CA discuss this aspect of Coleman's claim in her analysis of the evidence or her determination of damages. Because res judicata requires an adjudication on the merits of the claim, *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008), the court finds Coleman is not barred from litigating his failure to rehire *Shakman* claim in this case.

B.    <u>Timeliness of Coleman's Failure to Rehire *Shakman* Claim</u>

As discussed above, Coleman's failure to rehire claim is governed by the SRO's "procedure for alleged violations occurring after the entry of the SRO," set forth in Section V of the SRO. That section provides, in relevant part:

> Any individual who alleges that she or he is a victim of unlawful political discrimination in connection with any aspect of government employment with the County in violation of the Consent Decrees or the SRO at any time after the final approval of this SRO may seek relief through the claim and arbitration procedure established by this SRO or may pursue his or her claim under applicable law. Subject to the tolling provision below, a Complainant who wishes to seek to recover damages suffered as a result of unlawful political discrimination must make a

complaint with the [Cook County Inspector General's Office ("IGO")][9] or file suit within one hundred twenty (120) days after the date on which the Complainant learned or should have learned of the unlawful conduct.  If the Complainant chooses to file suit, the limitations period of applicable law shall govern.

* * *

The IGO shall investigate such complaints expeditiously.  The IGO shall complete its investigation within one hundred eighty (180) days of receipt of the complaint.  If the IGO is not able to complete its investigation within the time allotted, the IGO shall notify the [State's Attorney's Office], the Complainant (if the Complainant has alleged that she or he has been harmed by the unlawful political discrimination), the CA, and Plaintiffs' Counsel of the reasons for the failure to complete the investigation within the allotted time.  The IGO notice of failure to complete the investigation within one hundred eighty (180) days will be accompanied by a Notice of Rights.  The Notice of Rights will inform Complainant that if he or she wishes to seek relief for alleged unlawful political discrimination in connection with any aspect of government employment with the County, the Complainant must either wait for the IGO to complete its investigation to pursue a claim under the Consent Decrees or the SRO or may pursue his or her claim under applicable law by filing suit within forty-five (45) days.  The limitations period applicable to any individual's claims against the County or any other person will be tolled from the date a complaint is filed with the IGO until the date the IGO issues its report.

(SRO Section V (introduction and ¶ A.6).)

By its plain language, Section V of the SRO permits claimants a choice of either filing a lawsuit or complying with the SRO's claim and arbitration procedures.  Coleman opted to file a complaint with the post-SRO Complaint Administrator on August 27, 2009.  (2d Am. Compl. ¶ 7.)  The post-SRO Complaint Administrator subsequently issued Coleman a "notice of rights" on March 8, 2010, notifying Coleman that he may "pursue his . . . claim under applicable law by filing a law suit within forty-five (45) days of receipt of this Notice."  (*Id.* ¶ 8.)  Coleman filed

---

[9] On February 12, 2009, with the agreement of the *Shakman* parties, Judge Andersen appointed Mark J. Vogel "to serve as the complaint administrator ('Complaint Administrator') to administer post-SRO Complaint procedures and fulfill the duties and powers granted to the IGO in Section V of the SRO."  (69 C 2145, Dkt. No. 1025.)  The original footnote 1. in Section V of the SRO has been omitted here.

19

his initial complaint in this case against Cook County and Fairman on April 18, 2010, alleging violations of *Shakman* and § 1983. (Dkt. No. 1.) Coleman added Gilmore as a defendant on April 22, 2010, and added Dunlap as a defendant on July 27, 2010. (Dkt. Nos. 4, 15.)

The County Defendants argue that, pursuant to Section V of the SRO, Coleman's claims can only be based on events occurring one hundred and twenty days or less before the filing of Coleman's August 27, 2009 post-SRO complaint form, and it is their position that "Plaintiff's claims alleged to have occurred prior to April 29, 2009 are not timely filed." (County's Mot. 9; *see also* Dunlap's Mot. 14 (identifying "only one alleged wrong that falls within the one hundred and twenty days of the August 27, 2009, filing").)

Generally, plaintiffs "need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital*, 559 F.3d 671, 674 (7th Cir. 2009). Dismissal on statute of limitations grounds is appropriate, however, "when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Id.* at 674-75. The allegations in Coleman's Second Amended Complaint center on two main events: Coleman's March 2007 termination (2d Am. Compl. ¶ 5; Count I, ¶¶ 18-25) and Coleman's futile attempts at re-employment with the County since the time of his termination (Count I, ¶¶ 26-34; Count II ¶¶ 20). As discussed above, Coleman's termination claim is barred by the doctrine of res judicata and is not properly before this court. The timeliness of Coleman's termination claim is therefore a moot issue. Coleman's failure to rehire claim includes a number of different time periods. Events occurring in June 2009 and July 2009 (Count I, ¶¶ 28, 30) were timely brought before the post-SRO Complaint Administrator in August 2009 pursuant to the terms set forth in Section V of the SRO. Similarly, because Coleman has not alleged the specific

20

dates he applied for the positions of Recreational supervisor, Group Service supervisor, Recreational Worker, Juvenile Counselor, and Assistant Team Leader (Count I, ¶ 27), the court cannot say that Coleman has affirmatively established that these acts were untimely in relation to his post-SRO complaint.  Events occurring "before . . . the transfer of administration to the Chief Judge" (Count I, ¶ 26),[10] on the other hand, clearly fall outside Section V's one-hundred-and-twenty-day limit.

Coleman argues that equitable tolling should apply to his case, in light of the fact that "neither the CA nor Judge Andersen would or could consider [his failure to rehire claim] because the conduct occurred after February 2, 2007."  (Coleman's Resp. 13.)  The court agrees that equitable tolling is appropriate under the circumstances of this case.  As discussed above, Coleman originally brought his failure to rehire claim under the pre-SRO procedures.  The pre-SRO procedures explicitly allow for the application of equitable tolling provisions.  (*See* SRO Section IV ¶ C.2.)  Equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before." *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006) (citation omitted).  Coleman's failure to rehire claim was pending before the CA, and then before Judge Andersen, from May 21, 2007 through April 28, 2009.  In light of Coleman's mixed pre-SRO and post-SRO claims, and the resultant confusion regarding the scope of Coleman's pre-SRO claims, the court finds that equitable

---

[10] On August 16, 2007, the State of Illinois enacted legislation transferring administration of the JTDC from the executive branch of Cook County to the Office of the Chief Judge of the Circuit Court of Cook County ("OCJ").  (*See* Illinois Public Act 95-0194 (effective Jan. 1, 2008); *see also* 55 ILCS 75/3(b).)  It is undisputed that the Chief Judge has supported the retention of Dunlap as the Transitional Administrator of the JTDC at all times since the enactment of this legislation.  (2d Am. Compl. ¶ 6.)

tolling excused Coleman from having to file his post-SRO claim with the Complaint Administrator until after Judge Andersen's clarifying order was issued on April 28, 2009.  In other words, based on the pleadings before the court and the undisputed evidence from the *Shakman* record, it appears to the court that Coleman "should have learned" that he had a post-SRO claim sometime on or about April 28, 2009.

The post-SRO procedures gave Coleman one hundred and twenty days from the date he "learned or should have learned" of Judge Andersen's April 28, 2009 Order to file a complaint with the Complaint Administrator.  (SRO Section V (introduction).)  Coleman's claim was received on August 27, 2009, one hundred and twenty-one days after Judge Andersen's order was issued.  (2d Am. Compl. ¶ 7.)  Because the allegations of the Second Amended Complaint do not affirmatively establish the date on which Coleman learned of Judge Andersen's April 28, 2009 Order, and it is entirely plausible that Coleman did not learn of the order until the day following its issue, the court declines to dismiss Coleman's failure to rehire claim as time-barred at this point in the litigation.  This issue may be revisited after discovery if new evidence comes to light inconsistent with the dates relied upon in the court's analysis.

Dunlap separately argues that Coleman's *Shakman* claim is untimely as it pertains to Dunlap, since he was not added as a defendant until July 27, 2010 — more than forty-five days after Coleman received his "notice of rights" from the Complaint Administrator.  Although it is not clear from the allegations of the Second Amended Complaint exactly when Coleman received his notice of rights form, Coleman has alleged that this form was "issued" on March 8, 2010.  (2d Am. Compl. ¶ 8.)  Accordingly, Coleman's original Complaint was timely when filed within forty-five days, on April 18, 2010.  (Dkt. No. 1.)  Federal Rule of Civil Procedure 15(c)

allows the "relation back" of an amended complaint to the date of a timely filed original

complaint if "the amendment asserts a claim or defense that arose out of the conduct, transaction,

or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P.

15(c)(1)(B).  That is the case here, where the only substantive change from the original

Complaint was the addition of Dunlap and the Chief Judge of the Circuit Court of Cook County

as defendants.  To the extent Coleman "chang[ed] the party or the naming of the party against

whom [his] claim is asserted," Fed. R. Civ. P. 15(c)(1)(C), the court finds that Rule 15(c)(1)(C)

is satisfied insofar as Dunlap received notice of the action within the Rule 4(m) time period and

either "knew or should have known that the action would have been brought against [him], but

for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  It is clear

from the allegations of the Complaint that Coleman's intent was to sue whomever was

responsible for ensuring the JTDC's compliance with the *Shakman* Consent Decrees.  *See*

*Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2497 (2010) (finding a mistake of identity

due to "[plaintiff's] misunderstanding about which . . . entity was in charge of the ship").

Because the claims set forth in Coleman's Second Amended Complaint against Dunlap relate

back to Coleman's timely-filed claims against the County Defendants, and because the elements

of Rule 15(c)(1)(C) are satisfied, Coleman's *Shakman* claim against Dunlap will not be

dismissed as time-barred.

    C.    <u>Scope of the *Shakman* Consent Decrees and SRO as Applied to Defendants</u>

    Finally, both Cook County and Dunlap argue that they are not subject to the *Shakman*

Decrees as they apply to Coleman's failure to rehire claim.  Cook County bases its argument on

the fact that administrative authority over the JTDC was transferred from Cook County to

Dunlap in August 2007, leaving Cook County with no control over "the decision whether or not

to rehire Plaintiff." (County's Mot. 11.) In the alternative, Cook County argues that, "pursuant

to statute, hiring decisions for the JTDC ceased to be under the authority and auspices of Cook

County as of January 1, 2008," when the Office of the Chief Judge of the Circuit Court of Cook

County assumed statutory control over the JTDC. (*Id.* at 10.) The court generally agrees with

Cook County that it should not be held responsible for administrative decisions taking place after

Dunlap's appointment as the Transitional Administrator. *See Brass v. Cook County*, No. 09 C

6873, 2011 WL 124251, at *4 (N.D. Ill. Jan. 14, 2011) (holding that "Cook County cannot fairly

be considered responsible [under § 1983] for Dunlap's actions or the alleged injuries resulting

therefrom" because Cook County had no ability "to oversee or control [Dunlap's] actions"). The

court declines to dismiss Coleman's *Shakman* claim against Cook County, however, because it is

not clear on the face of the Second Amended Complaint that the entirety of Coleman's failure to

rehire claim occurred after Dunlap's appointment. Coleman was terminated in March 2007 and

Dunlap was appointed in August of that same year. Coleman's failure to rehire claim includes

the allegation that he "applied for numerous positions for which he was well-qualified before . . .

the transfer of administration to the Chief Judge," which was effective by statute on January 1,

2008. (2d Am. Compl. ¶¶ 26-27.) Consistent with this allegation, Coleman could have applied

for re-employment with the JTDC sometime between March 2007 and August 2007, at which

point Cook County would still be responsible for any related violations of the *Shakman* Decrees.

The court therefore rejects Cook County's argument on this point.

Dunlap asserts that he is not subject to the *Shakman* Consent Decrees, insofar as he was

24

not a named party to either of the Consent Decrees, is not a Cook County employee or officer, and does not report to the President of the Cook County Board of Commissioners. (Dunlap's Mem. 8-9.) Dunlap stresses that his "responsibility is to this Court, and it is up to this Court to determine whether he is performing in a manner consistent with the terms of his appointment order." (Dunlap's Reply 5.) While Dunlap's assessment of his status is correct, the court is not persuaded that the Transitional Administrator of the JTDC should be exempt from the reach of the *Shakman* Consent Decrees.

As discussed in Section I above, at the time of his appointment, Dunlap was given extensive administrative responsibility over the JTDC. This grant of authority included the responsibility "[t]o oversee, supervise, and direct all management, administrative, financial, contractual, personnel, security, housing, custodial, purchasing, maintenance, technology, health services, mental health services, food and laundry service, recreational, educational, and programmatic functions relating to the operations of the JTDC *consistent with the authority vested in the position of the Superintendent of the JTDC*." (Appointment Order ¶ 5.b. (emphasis added).) Consistent with these terms, the scope of Dunlap's hiring and firing authority cannot exceed the scope of the Superintendent's hiring and firing authority—and the Superintendent's authority is limited by the *Shakman* Consent Decrees. The SRO makes clear that "[t]he prohibitions of the Consent Decrees shall cover all employment by or for the County, or by or for any person or entity under the direction and control of the County, except for Exempt Positions." (2007 SRO ¶ III.A.) Coleman sought "employment by or for the County," thus triggering the provisions of the *Shakman* Consent Decrees. (*Id.*) Insofar as Dunlap can be viewed as stepping into the shoes of the JTDC's Superintendent, Dunlap was obligated to

comply with the terms of the *Shakman* Consent Decrees as they pertain to Coleman's failure to rehire claim.

III.    Section 1983 Claims (Count II)

    A.    Timeliness of Coleman's § 1983 Claim

The County Defendants and Dunlap both argue that Coleman's § 1983 claims are time-barred. Pursuant to applicable law, the statute of limitations for § 1983 claims brought in the Northern District of Illinois is two years. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). As discussed above, dismissal on statute of limitations grounds is appropriate at this stage in the litigation only if a plaintiff "alleg[es] facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc.*, 559 F.3d at 674.

In his § 1983 claim, Coleman has alleged that the County Defendants and Dunlap "intentionally subjected [him] to unequal and retaliatory treatment by denying him promotions, denying him preferential or normal rehire, in violation of the First Amendment and treating him in an overall disparate manner." (Count II, ¶ 20.) Coleman does not specifically allege when these actions occurred. To the extent Coleman incorporates paragraphs 1-16 of his Second Amended Complaint into Count II, however (Count II, ¶ 17), some light is shed on the dates applicable to Coleman's § 1983 claim. Paragraphs 5 and 14 of the Second Amended Complaint make clear that Coleman's employment with the JTDC was terminated on March 13, 2007. (2d Am. Compl. ¶¶ 5, 14.) Thus, any failure on the part of the defendants to promote Coleman necessarily must have occurred before this date. Because Coleman's Complaint was not filed until April 18, 2010, more than two years after Coleman's termination in March 2007, Coleman's § 1983 claim is time-barred to the extent it is based on his failure to promote

26

allegations. On the other hand, Count II does not include any dates regarding Coleman's failure

to rehire allegations. Therefore, Coleman cannot have pleaded himself out of court by

affirmatively establishing a complete statute of limitations defense to his § 1983 claim.

     B.     <u>Sufficiency of Coleman's *Monell* Allegations</u>

     The County Defendants and Dunlap also argue that Coleman has failed to plead a

plausible *Monell* claim against either Cook County or the individually-named defendants in their

official capacities. "A village or other municipality may be found liable under § 1983 when it

violates constitutional rights via an official policy or custom." *Wragg v. Vill. of Thornton*, 604

F.3d 464, 467 (7th Cir. 2010). To prove municipal liability for a § 1983 *Monell* claim, "a

plaintiff must show that his constitutional injury was caused 'by (1) the enforcement of an

express policy of the [municipality], (2) a widespread practice that is so permanent and well

settled as to constitute a custom or usage with the force of law, or (3) a person with final

policymaking authority.'" *Id.* (quoting *Latuszkin v. City of Chi.*, 250 F.3d 502, 504 (7th Cir.

2001)) (additional alteration made by this court).

     In this case, Coleman has not alleged that an express policy caused his constitutional

injury. Coleman does allege that "[a]t all times relevant hereto, Defendants Cook County, J. W.

Fairman, Kim David Gilmore, the Chief Judge and Dunlap acted or have acted as . . . final policy

maker." (Count II, ¶ 18; *see also* 2d Am. Compl. ¶ 6 ("Individual defendants J. W. Fairman and

Kim David Gilmore were the final decision makers on plaintiff's discharge". . . Earl Dunlap was

appointed transitional administrator of JTDC to 'oversee, supervise and direct' all functions

relating to the JTDC").) The Supreme Court has made clear that "a complaint must contain

sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its

face,'" *Iqbal*, 129 S. Ct. at 1940 (*Twombly*, 550 U.S. at 570), and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As applied to § 1983 claims alleged against municipal defendants, this means the factual allegations in the complaint must "suggest a plausible basis for municipal liability under *Monell*." *Goods v. Dart,* No. 09 C 7406, 2011 WL 856816, at *4 (N.D. Ill. Mar. 8, 2011). As explained above, to the extent Coleman's § 1983 claim is based on events transpiring on or before the date of his discharge, his claim is time-barred. Thus, the allegations in the Second Amended Complaint regarding Fairman and Gilmore's role as final policymaker in Coleman's termination decision are inapposite. There are also no factual allegations plausibly suggesting that either Fairman or Gilmore was the final policymaker in the decision not to rehire Coleman. Rather, all allegations in the Second Amended Complaint regarding Coleman's failure to rehire claim, including those set forth solely in Count I, involve either unnamed County representatives (Count I, ¶¶ 26, 28) or County Recruiter Felecia Watson (Count 1, ¶¶ 28, 30). The bare assertion that, "at all times" Fairman and Gilmore "acted as . . . final policymaker" is not enough to plausibly state a *Monell* claim, without more. Finally, as discussed in detail in Section III.D below, Dunlap's status as a federal agent precludes him from acting as a final policymaker on behalf of Cook County for purposes of § 1983. *See also Brass*, 2011 WL 124251, at *4 ("Cook County cannot fairly be considered responsible [under § 1983] for Dunlap's actions or the alleged injuries resulting therefrom" because Cook County has no ability "to oversee or control [Dunlap's] actions"). The court therefore finds that the Second Amended Complaint contains no plausible allegations that Coleman's constitutional injury was caused by a person with final policymaking authority acting on behalf of Cook County.

In Count I, Coleman alleges that Cook County and Dunlap "have continued to engage in a pattern or practice of violating the *Shakman* Decree." (Count I, ¶ 33.) Coleman acknowledges that he failed to incorporate this paragraph by reference into Count II, and asks leave to do so through amendment. (Coleman's Resp. 16.) Even if the court considers this allegation to be part of Count II, however, the court finds this conclusory statement insufficient to state a plausible *Monell* claim. As in *Goods*, Coleman does not "offer[ ] any facts that support the conclusion that the wrongdoing he has allege[d] is the product of County custom or practice." *Goods*, 2011 WL 856816, at *4. All of the allegations of the Second Amended Complaint pertain only to the defendants' treatment of Coleman, and together these allegations do not plausibly suggest "a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law." *Wragg*, 604 F.3d at 467; *cf. Humphrey v. Dart*, No. 11 C 1286, 2011 WL 1042698, at *2-3 (N.D. Ill. Mar. 21, 2011) (finding plausible allegations of a widespread practice or custom where plaintiff's allegations described a "general pattern of repeated behavior" of mismanagement, including the failure to segregate dangerous inmates and general understaffing that resulted in a particular unsafe practice).

Because Coleman has failed to "suggest a plausible basis for municipal liability under *Monell*," *Goods,* 2011 WL 856816, at *4, the court grants the County Defendants' motion to dismiss Count II as alleged against Cook County and the individually-named defendants in their official capacities. The court will, however, permit Coleman an opportunity to amend his *Monell* claim, should he desire to do so, by filing a Third Amended Complaint consistent with this order on or before July 8, 2011.

29

C.    Individual Defendants' Liability Under § 1983

To the extent Coleman brings his § 1983 claim against Fairman and Dunlap in their individual capacities, both defendants argue that Coleman's claim must be dismissed for failure to sufficiently allege their personal involvement in Coleman's alleged constitutional violations. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus, to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

In Count II, Coleman alleges generally that "Defendants intentionally subjected plaintiff to unequal and retaliatory treatment by . . . denying him preferential or normal rehire, in violation of the First Amendment and treating him in an overall disparate manner." (Count II, ¶ 20.)  The County Defendants argue that this allegation does not "state how this action rises to the level of a constitutional violation," nor does it include any specific allegations regarding Fairman.  (County's Mot. 13.)  Coleman has not included in Count II, nor has he incorporated from Count I, any specific factual allegations regarding the defendants' failure to rehire him. Even if Coleman had incorporated his factual allegations from Count I, however, these allegations do not concern Fairman, as mentioned above.  In response to the County Defendants' argument, Coleman relies on paragraph 6 of his Second Amended Complaint, which states that Fairman and Gilmore together "were the final decision makers on plaintiff's discharge."  (2d Am. Compl. ¶ 6.)  Coleman also clarifies that "Fairman is a defendant because he was in charge of the JTDC when plaintiff was terminated."  (Coleman's Resp. 7.)  These arguments do not support Coleman's remaining § 1983 claim against Fairman, because this claim has been limited

30

to the defendants' failure to rehire Coleman.  Because Coleman has suggested no other basis for

personal liability against defendant Fairman, the County Defendants' motion to dismiss Count II

as alleged against Fairman is granted, and Coleman's § 1983 claim against Fairman in his

individual capacity is dismissed with prejudice.  The court need not address the sufficiency of

the allegations against Dunlap in his individual capacity, having found in Section III.D. below

that this claim cannot survive as a matter of law.

D.      Dunlap's Liability Under § 1983

Finally, Dunlap argues that he is not subject to liability under § 1983, because "the

federal government and its officials are beyond the purview of Section 1983, which applies only

to state actors acting under color of state law."  (Dunlap's Mem. 10.)  *See Dist. of Columbia v.*

*Carter*, 409 U.S. 418, 424-25 (1973) (Section 1983 "deals only with those deprivations of rights

that are accomplished under the color of the law of 'any State or Territory.'").  As Dunlap notes,

he is "an agent of the United States District Court and his authority to act in his oversight of the

JTDC derives exclusively from this federal Court and each of his duties and responsibilities flow

from an order of this Court."  (Dunlap's Mem. 10.)

Coleman argues in response that Dunlap performs functions "historically . . . reserved to

the states," and he concludes that Dunlap's actions therefore are "necessarily . . . attributable to

the state." (Coleman's Resp. 8-9.)  In support of his position, Coleman relies on three established

tests for distinguishing private action from state action:  the "public function" test, the "state

compulsion" test, and the "symbiotic" or "nexus" test.  (*Id.* at 9-11.)  Coleman also relies on

arguments made in the case of *Brass v. Cook County*, 09 C 6873 (N.D. Ill.), and emphasizes that

Dunlap "acts on behalf of the County when he hires and fires," that Cook County is responsible

31

for funding the JTDC and for paying Dunlap's salary, and that Cook County encourages and benefits from Dunlap's attempts to bring the JTDC into compliance with the settlement agreements reached by the parties in *Doe v. Cook County*.  (Coleman's Resp. 10.)

Like the plaintiff in *Brass*, Coleman has failed to appreciate the precise nature of the issue before the court.  This court does not doubt that Dunlap's actions are "entwined with governmental policies or . . . impregnated with a governmental character," (Coleman's Resp. 11 (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966))), as there is no doubt that Dunlap is a government actor.  The relevant question before the court is whether Dunlap is a *state* actor.  As in *Brass*, the court here concludes that Dunlap is a federal actor.  *See Brass*, 2011 WL 124251, at *5 ("It is undisputed that Dunlap has been expressly made an agent of the federal court, authorized through a federal court order to implement and enforce other federal court orders."). The specific function performed by Dunlap — "restructur[ing] the JTDC into an institution that substantially complies with [prior court orders]" (Appointment Order ¶ 5.b) — is not a function traditionally performed by state government.  It is a function unique to Dunlap's appointment by the federal court.  The court fully appreciates the complexity of this issue, and recognizes that Cook County both funds Dunlap's actions and stands to benefit from them.  In this unique situation, however, the fact that "Dunlap's administration of the JTDC is guided wholly and completely by federal court orders," *Brass*, 2011 WL 124251, at *5, leads the court to conclude that Dunlap is a federal actor.  Because Dunlap cannot be found liable under § 1983, Count II is dismissed with prejudice as alleged against him.

<u>CONCLUSION</u>

For the reasons set forth above, the "County Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint" (Dkt. No. 22) and the "Motion of Defendants Earl Dunlap and The Chief Judge of the Circuit Court of Cook County, Illinois to Dismiss Plaintiff's Second Amended Complaint" (Dkt. No. 24) are both granted in part and denied in part. Plaintiff Rickey Coleman's *Shakman* claim (Count I) is dismissed with prejudice in part pursuant to the doctrine of res judicata, to the extent Count I is based on Coleman's March 16, 2007 termination. To the extent Count I is based on Coleman's failure to rehire allegations, Count I remains pending against defendants Cook County and Earl Dunlap. Coleman's § 1983 claim (Count II) is dismissed with prejudice as alleged against defendants J. W. Fairman and Earl Dunlap, in their individual capacities, and is dismissed without prejudice as alleged against Cook County. Coleman is granted leave to file a Third Amended Complaint consistent with this order on or before July 8, 2011, amending his *Monell* claim against Cook County, should he desire to do so. Defendants' answers are due July 22, 2011. Status hearing set for August 11, 2011 at 9:00 a.m. for purposes of scheduling further dates in this case.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: June 22, 2011

33

APPEAL, DENLOW

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 4.2 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:10-cv-02388
## Internal Use Only

Coleman v. County of Cook et al                    Date Filed: 04/18/2010
Assigned to: Honorable James F. Holderman          Jury Demand: Both
Demand: $750,000                            Nature of Suit: 442 Civil Rights: Jobs
Cause: 42:1983 Civil Rights Act                 Jurisdiction: Federal Question

**Plaintiff**

**Rickey Coleman**               represented by    **John Thomas Moran**
The Moran Law Group
309 West Washington Blvd.
Suite 900
Chicago, IL 60606-3209
(312) 630-0200
Fax: (312) 630-0203
Email: j.t.moran@moranlawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Todd Layman**
The Moran Law Group
309 West Washington
Suite 900
Chicago, IL 60606
312 630 0200
Email: m.layman@moranlawgroup.com

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**County of Cook**               represented by    **Lisa Marie Meador**
*a unit of local Government*                        Cook County State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-4186
Email: Lisa.Meador@cookcountyil.gov
*ATTORNEY TO BE NOTICED*

**Patricia Maria Fallon**
Cook County State's Attorney
500 Richard J. Daley Center

Chicago, IL 60602
(312) 603-7202
Email: pfallon@cookcountygov.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**J. W. Fairman**                    represented by **Lisa Marie Meador**
*an individual*                                      (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Patricia Maria Fallon**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**Kim David Gilmore**
*an individual*

**Defendant**

**Earl Dunlap**                      represented by **Kent Stephen Ray**
*the Transitional Administrator of the*              Cook County State's Attorney's Office
*Juvenile Temporary Detention Center*                Conflicts Counsel Unit
                                                     69 West Washington Street
                                                     Suite 2030
                                                     Chicago, IL 60602
                                                     (312) 603-1427
                                                     Email: kent.ray@cookcountyil.gov
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Patrick Stephen Smith**
                                                     Cook County States Attorney's Office
                                                     Daley Ctr.
                                                     500 Richard J. Daley Center
                                                     Chicago, IL 60602
                                                     (312) 603-1422
                                                     Email: patrick.smith@cookcountyil.gov

                                                     *ATTORNEY TO BE NOTICED*

**Defendant**

**Chief Judge of the Circuit Court of**   represented by **Kent Stephen Ray**
**Cook County, Illinois**                                (See above for address)
*in his capacity as Superintendent of the*               *LEAD ATTORNEY*
*Juvenile Temporary Detention Center*                    *ATTORNEY TO BE NOTICED*
*TERMINATED: 12/09/2010*
                                                         **Patrick Stephen Smith**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/18/2010 | 1 | COMPLAINT filed by RICKEY COLEMAN; Jury Demand. Filing fee $ 350, receipt number 0752-4724284. (Attachments: # 1 Exhibit, # 2 Exhibit) (Moran, John) (Entered: 04/18/2010) |
| 04/18/2010 | 2 | CIVIL Cover Sheet (Moran, John) (Entered: 04/18/2010) |
| 04/18/2010 | 3 | ATTORNEY Appearance for Plaintiff RICKEY COLEMAN by John Thomas Moran (Moran, John) (Entered: 04/18/2010) |
| 04/19/2010 | | CASE ASSIGNED to the Honorable Samuel Der-Yeghiayan. Designated as Magistrate Judge the Honorable Morton Denlow. (lcw, ) (Entered: 04/19/2010) |
| 04/22/2010 | 4 | AMENDED complaint by Rickey Coleman against County of Cook, J. W. Fairman, KIM DAVID GILMORE (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Moran, John) (Entered: 04/22/2010) |
| 06/29/2010 | 5 | ATTORNEY Appearance for Defendants County of Cook, J. W. Fairman by Lisa Marie Meador (Meador, Lisa) (Entered: 06/29/2010) |
| 06/29/2010 | 6 | MOTION by Defendants County of Cook, J. W. Fairman for extension of time *to answer or otherwise plead* (Meador, Lisa) (Entered: 06/29/2010) |
| 06/29/2010 | 7 | NOTICE of Motion by Lisa Marie Meador for presentment of extension of time 6 before Honorable Samuel Der-Yeghiayan on 7/6/2010 at 09:00 AM. (Meador, Lisa) (Entered: 06/29/2010) |
| 07/01/2010 | 8 | MINUTE entry before Honorable Samuel Der-Yeghiayan: Defendants County of Cook and J.W. Fairman's motion for extension of time to answer or otherwise plead 6 is granted to and including 08/02/10. Noticed motion date set for 07/06/10 is stricken. Initial status hearing set for 08/10/10 at 9:00 a.m. At least four working days before the initial status hearing, the parties shall conduct a FRCP 26(f) conference and file a joint written Initial Status Report, not to exceed five pages in length, and file the Court's Joint Jurisdictional Status Report and deliver courtesy copies to this Court's Courtroom Deputy in Room 1906. The Court's standing orders on the Initial Status Report and Joint Jurisdictional Status Report maybe obtained from Judge Der-Yeghiayan's web page or from this Court's Courtroom Deputy. Counsel for the Plaintiff is warned that failure to serve summons and complaint on Defendants will result in a dismissal of the action and/or a dismissal of that Defendant not properly served pursuant to FRCP 4. Counsel for Plaintiff is further directed to file with the Clerk of Court, the appropriate returns of service or waivers of service. Mailed notice (mw, ) (Entered: 07/01/2010) |
| 07/06/2010 | | SUMMONS Issued as to Defendant Kim David Gilmore. (vcf, ) (Entered: 07/06/2010) |
| 07/20/2010 | 9 | WAIVER OF SERVICE returned executed by Rickey Coleman. County of Cook waiver sent on 5/14/2010, answer due 7/13/2010. (Moran, John) |

| | | (Entered: 07/20/2010) |
|---|---|---|
| 07/20/2010 | 10 | WAIVER OF SERVICE returned executed by Rickey Coleman. J. W. Fairman waiver sent on 5/14/2010, answer due 7/13/2010. (Moran, John) (Entered: 07/20/2010) |
| 07/21/2010 | 11 | MOTION by Plaintiff Rickey Coleman to amend/correct *Complaint to Add Necessary Parties* (Moran, John) (Entered: 07/21/2010) |
| 07/21/2010 | 12 | NOTICE of Motion by John Thomas Moran for presentment of motion to amend/correct 11 before Honorable Samuel Der-Yeghiayan on 7/28/2010 at 09:00 AM. (Moran, John) (Entered: 07/21/2010) |
| 07/21/2010 | 13 | ATTORNEY Appearance for Plaintiff Rickey Coleman by Matthew Todd Layman (Layman, Matthew) (Entered: 07/21/2010) |
| 07/27/2010 | 14 | MINUTE entry before Honorable Samuel Der-Yeghiayan: Plaintiff's motion to amend/correct complaint to add necessary parties 11 is granted. Plaintiff is given leave until 08/03/10 to file an amended complaint. Counsel for the Plaintiff is warned that failure to serve summons and complaint on all Defendants will result in a dismissal of the action and/or a dismissal of that Defendant not properly served pursuant to FRCP 4. Counsel for Plaintiff is further directed to file with the Clerk of Court, the appropriate returns of service or waivers of service. Status hearing reset to 09/07/10 at 9:00 a.m. Noticed motion date of 07/28/10 and status hearing date of 08/10/10 are stricken. Mailed notice (mw, ) (Entered: 07/27/2010) |
| 07/27/2010 | 15 | *SECOND* AMENDED complaint by Rickey Coleman against County of Cook, J. W. Fairman, Kim David Gilmore (Moran, John) (Entered: 07/27/2010) |
| 07/27/2010 | | SUMMONS Issued as to Defendant Earl Dunlap. (kjd, ) (Entered: 07/27/2010) |
| 07/28/2010 | | SUMMONS Issued as to Defendant Chief Judge of the Circuit Court of Cook County, Illinois. (kjd, ) (Entered: 07/28/2010) |
| 07/28/2010 | 16 | ATTORNEY Appearance for Defendants County of Cook, J. W. Fairman by Patricia Maria Fallon (Fallon, Patricia) (Entered: 07/28/2010) |
| 08/10/2010 | 17 | ATTORNEY Appearance for Defendants Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap by Kent Stephen Ray (Ray, Kent) (Entered: 08/10/2010) |
| 08/10/2010 | 18 | ATTORNEY Appearance for Defendants Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap by Patrick Stephen Smith (Smith, Patrick) (Entered: 08/10/2010) |
| 08/10/2010 | 19 | MOTION by Defendants County of Cook, J. W. Fairman for extension of time to file answer *or otherwise plead* (Fallon, Patricia) (Entered: 08/10/2010) |
| 08/10/2010 | 20 | NOTICE of Motion by Patricia Maria Fallon for presentment of motion for extension of time to file answer 19 before Honorable Samuel Der- |

| | | |
|---|---|---|
| | | Yeghiayan on 8/17/2010 at 09:00 AM. (Fallon, Patricia) (Entered: 08/10/2010) |
| 08/17/2010 | 21 | MINUTE entry before Honorable Samuel Der-Yeghiayan: Defendants County of Cook and J. W. Fairman's motion for extension of time to answer or otherwise plead 19 is granted to and including 08/31/10 as to all Defendants. Status hearing set for 09/07/10 at 9:00 a.m. to stand. As previously ordered, parties are directed to file the Court's Joint Initial Status Report prior to the 09/07/10 status hearing. Mailed notice (mw, ) (Entered: 08/17/2010) |
| 08/31/2010 | 22 | MOTION by Defendants J. W. Fairman, County of Cook to dismiss (Attachments: # 1 Exhibit #A, # 2 Exhibit #B, # 3 Exhibit #C)(Fallon, Patricia) (Entered: 08/31/2010) |
| 08/31/2010 | 23 | NOTICE by County of Cook, J. W. Fairman re MOTION by Defendants J. W. Fairman, County of Cook to dismiss 22 (Fallon, Patricia) (Entered: 08/31/2010) |
| 08/31/2010 | 24 | MOTION by Defendants Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap to dismiss *Plaintiff's Second Amended Complaint* (Ray, Kent) (Entered: 08/31/2010) |
| 08/31/2010 | 25 | MEMORANDUM by Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap in support of motion to dismiss 24 *Plaintiff's Second Amended Complaint* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Ray, Kent) (Entered: 08/31/2010) |
| 08/31/2010 | 26 | NOTICE by Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap re memorandum in support of motion, 25 , MOTION by Defendants Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap to dismiss *Plaintiff's Second Amended Complaint* 24 (Ray, Kent) (Entered: 08/31/2010) |
| 09/02/2010 | 27 | Joint Initial Status Report by Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap (Ray, Kent) (Entered: 09/02/2010) |
| 09/02/2010 | 28 | NOTICE by Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap re other 27 (Ray, Kent) (Entered: 09/02/2010) |
| 09/02/2010 | 29 | MINUTE entry before Honorable Samuel Der-Yeghiayan: Status hearing set for 09/07/10 is stricken. Mailed notice (mw, ) (Entered: 09/02/2010) |
| 09/02/2010 | 30 | EXECUTIVE COMMITTEE ORDER: Case reassigned to the Honorable James F. Holderman for all further proceedings in accordance with the provisions of Rule 13 of the Internal Operating Procedures of this Court. Signed by Executive Committee on 9/2/2010. (ph, ) (Entered: 09/07/2010) |
| 09/14/2010 | 31 | MINUTE entry before Honorable James F. Holderman: Status hearing set for 9/21/2010 at 9:00 AM. Mailed notice (am) (Entered: 09/14/2010) |
| 09/21/2010 | 32 | MINUTE entry before Honorable James F. Holderman: Status hearing held on 9/21/2010. On defendants J.W. Fairman, County of Cook's motion to |

|  |  |  |
|---|---|---|
|  |  | dismiss 24 and defendants Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap's motion to dismiss plaintiff's second amended complaint 22 , plaintiffs' responses due by 10/14/2010. Defendants' replies due by 10/28/2010. Mailed notice (am) (Entered: 09/23/2010) |
| 10/06/2010 | 33 | MOTION by Plaintiff Rickey Coleman for extension of time to file response/reply *to defendants' motions to dismiss* (Moran, John) (Entered: 10/06/2010) |
| 10/06/2010 | 34 | NOTICE of Motion by John Thomas Moran for presentment of motion for extension of time to file response/reply 33 before Honorable James F. Holderman on 10/14/2010 at 09:00 AM. (Moran, John) (Entered: 10/06/2010) |
| 10/13/2010 | 35 | MINUTE entry before Honorable James F. Holderman: Plaintiff's unopposed motion to extend time to respond to the pending motions to dismiss 33 is granted. On defendants motions to dismiss 24 22 , responses due by 10/21/2010; replies due by 11/4/2010. The Court to rule electronically and will set further dates at the time of ruling. Mailed notice (am) (Entered: 10/13/2010) |
| 10/21/2010 | 36 | RESPONSE by Rickey Colemanin Opposition to MOTION by Defendants J. W. Fairman, County of Cook to dismiss 22 , MOTION by Defendants Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap to dismiss *Plaintiff's Second Amended Complaint* 24 (Attachments: # 1 Exhibit, # 2 Exhibit)(Moran, John) (Entered: 10/21/2010) |
| 10/21/2010 | 37 | MOTION by Plaintiff Rickey Coleman for leave to file excess pages (Moran, John) (Entered: 10/21/2010) |
| 10/21/2010 | 38 | NOTICE of Motion by John Thomas Moran for presentment of motion for leave to file excess pages 37 before Honorable James F. Holderman on 10/28/2010 at 09:00 AM. (Moran, John) (Entered: 10/21/2010) |
| 10/28/2010 | 39 | MINUTE entry before Honorable James F. Holderman: Plaintiff's motion for leave to file a combined request of seventeen pages 37 is granted. Mailed notice (am) (Entered: 10/29/2010) |
| 11/04/2010 | 40 | REPLY by Defendants County of Cook, J. W. Fairman *in Support of their Motion to Dismiss* (Fallon, Patricia) (Entered: 11/04/2010) |
| 11/04/2010 | 41 | NOTICE by County of Cook, J. W. Fairman re reply 40 (Fallon, Patricia) (Entered: 11/04/2010) |
| 11/04/2010 | 42 | REPLY by Defendants Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap *Brief in Support of Earl Dunlap and the Chief Judge of the Circuit Court of Cook County's Motion to Dismiss* (Ray, Kent) (Entered: 11/04/2010) |
| 11/04/2010 | 43 | NOTICE by Chief Judge of the Circuit Court of Cook County, Illinois, Earl Dunlap re reply 42 (Ray, Kent) (Entered: 11/04/2010) |
| 11/11/2010 | 44 | SUR-REPLY by Plaintiff Rickey Coleman to reply 40 , reply 42 *SUR RESPONSE* (Attachments: # 1 Exhibit)(Moran, John) (Entered: 11/12/2010) |

| | | |
|---|---|---|
| 11/12/2010 | 45 | NOTICE of Motion by John Thomas Moran for presentment of before Honorable James F. Holderman on 11/23/2010 at 09:00 AM. (Moran, John) (Entered: 11/12/2010) |
| 11/23/2010 | 46 | MINUTE entry before Honorable James F. Holderman: Plaintiff's motion for leave to file sur-response 44 is granted; defendant's final reply is due by 12/3/2010. Mailed notice (am) (Entered: 11/24/2010) |
| 12/03/2010 | 47 | SUR-REPLY by Defendant Earl Dunlap *Brief in Support of Earl Dunlap's Motion to Dismiss* (Ray, Kent) (Entered: 12/03/2010) |
| 12/03/2010 | 48 | NOTICE by Earl Dunlap re sur-reply 47 (Ray, Kent) (Entered: 12/03/2010) |
| 12/07/2010 | 49 | STIPULATION of Dismissal (Ray, Kent) (Entered: 12/07/2010) |
| 12/07/2010 | 50 | NOTICE by Chief Judge of the Circuit Court of Cook County, Illinois re stipulation of dismissal 49 (Ray, Kent) (Entered: 12/07/2010) |
| 12/09/2010 | 51 | MINUTE entry before Honorable James F. Holderman:By stipulation of the parties, plaintiff's claims against defendant Chief Judge of the Circuit Court of Cook County, Illinois are dismissed without prejudice and without costs. Defendant Chief Judge of the Circuit Court of Cook County's motion to dismiss plaintiff's second amended complaint is withdrawn. Chief Judge of the Circuit Court of Cook County, Illinois terminated. Mailed notice (am) (Entered: 12/09/2010) |
| 01/31/2011 | 52 | NOTICE by Lisa Marie Meador of Change of Address -*email address* (Meador, Lisa) (Entered: 01/31/2011) |
| 02/01/2011 | 53 | NOTICE by Lisa Marie Meador of Change of Address -*email address amended* (Meador, Lisa) (Entered: 02/01/2011) |
| 06/22/2011 | 54 | MINUTE entry before Honorable James F. Holderman: ENTER MEMORANDUM OPINION AND ORDER: The "County Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint" 22 and the "Motion of Defendants Earl Dunlap and The Chief Judge of the Circuit Court of Cook County, Illinois to Dismiss Plaintiff's Second Amended Complaint" 24 are both granted in part and denied in part. Plaintiff Rickey Coleman's Shakman claim (Count I) is dismissed with prejudice in part pursuant to the doctrine of res judicata, to the extent Count I is based on Coleman's March 16, 2007 termination. To the extent Count I is based on Coleman's failure to rehire allegations, Count I remains pending against defendants Cook County and Earl Dunlap. Colemans § 1983 claim (Count II) is dismissed with prejudice as alleged against defendants J. W. Fairman and Earl Dunlap, in their individual capacities, and is dismissed without prejudice as alleged against Cook County. Coleman is granted leave to file a Third Amended Complaint consistent with this order on or before 7/8/2011, amending his Monell claim against Cook County, should he desire to do so. Defendants' answers are due 7/22/2011. Status hearing set for 8/11/2011 at 9:00 a.m. for purposes of scheduling further dates in this case. Mailed notice (am) (Entered: 06/22/2011) |
| 06/22/2011 | 55 | Memorandum Opinion and Order. Signed by the Honorable James F. |

| | | |
|---|---|---|
| | | Holderman on 6/22/2011: Mailed notice (am) (Entered: 06/22/2011) |
| 07/07/2011 | 56 | MOTION by Plaintiff Rickey Coleman for extension of time to amend *Complaint (Unopposed)* (Moran, John) (Entered: 07/07/2011) |
| 07/07/2011 | 57 | NOTICE of Motion by John Thomas Moran for presentment of motion for extension of time to amend 56 before Honorable James F. Holderman on 7/12/2011 at 09:00 AM. (Moran, John) (Entered: 07/07/2011) |
| 07/11/2011 | 58 | MINUTE entry before Honorable James F. Holderman: Plaintiff's unopposed motion to extend time to file a Third Amended Complaint 56 is granted. Plaintiff's Third Amended Complaint is due July 15, 2011; defendants are given until 8/1/2011 to answer the Third Amended Complaint. Parties are to confer and file a completed Form 52 on or before 8/9/2011. Status hearing remains set for 8/11/2011 at 9:00 AM for entry of scheduling order. Mailed notice (am) (Entered: 07/11/2011) |
| 07/12/2011 | 59 | MINUTE entry before Honorable James F. Holderman: By agreement of the parties, plaintiff is given until 7/20/2011 to file a Third Amended Complaint; defendants are given until 8/5/2011 to answer the Third Amended Complaint. Parties to file completed Form 52 on or before 8/9/2011. Status hearing remains set for 8/11/2011 at 9:00 for entry of scheduling order. Mailed notice (am) (Entered: 07/12/2011) |
| 07/20/2011 | 60 | MOTION by Defendant Earl Dunlap to stay *proceedings as to defendant Dunlap pending resolution of interlocutory appeal* (Ray, Kent) (Entered: 07/20/2011) |
| 07/20/2011 | 61 | NOTICE of Motion by Kent Stephen Ray for presentment of motion to stay 60 before Honorable James F. Holderman on 7/28/2011 at 09:00 AM. (Ray, Kent) (Entered: 07/20/2011) |
| 07/20/2011 | 62 | AMENDED *COMPLAINT (THIRD)* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit)(Moran, John) (Entered: 07/20/2011) |
| 07/20/2011 | 63 | NOTICE of appeal by Earl Dunlap regarding orders 55 (Ray, Kent) (Entered: 07/20/2011) |
| 07/20/2011 | 64 | NOTICE by Earl Dunlap re notice of appeal 63 (Ray, Kent) (Entered: 07/20/2011) |
| 07/20/2011 | 65 | MOTION by Plaintiff Rickey Coleman to alter judgment (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Moran, John) (Entered: 07/20/2011) |
| 07/20/2011 | 66 | NOTICE of Motion by John Thomas Moran for presentment of motion to alter judgment 65 before Honorable James F. Holderman on 7/28/2011 at 09:00 AM. (Moran, John) (Entered: 07/20/2011) |
| 07/21/2011 | 67 | NOTICE of Appeal Due letter sent to counsel of record. (gel, ) (Entered: 07/21/2011) |